**McGuireWoods LLP**
Matthew C. Kane, Esq.      (SBN 171829)
    Email:  mkane@mcguirewoods.com
Bethany A. Pelliconi, Esq.  (SBN 182920)
    Email:  bpelliconi@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone:   (310) 315-8200
Facsimile:    (310) 315-8210

Attorneys for Defendant
PAYCHEX, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IRONFORGE.COM,   individually   and for all others similarly situated,<br><br>                 Plaintiff,<br><br>        vs.<br><br>PAYCHEX, INC.<br><br>                 Defendant. | CASE NO. CV08-06818 SVW (JWJx)<br><br>**MOTION TO TRANSFER VENUE OF ACTION TO WESTERN DISTRICT OF NEW YORK:**<br><br>**(1)  NOTICE OF MOTION**<br><br>**(2)  REQUEST FOR JUDICIAL NOTICE**<br><br>**(3)  MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**(4)  DECLARATION OF BETHANY PELLICONI**<br><br>**(5)  DECLARATIONS OF:**<br>    **• DAVID VOGT**<br>    **• JOHN BYRNE**<br>    **• MICHAEL DEATS**<br>    **• REBECCA WAGNER**<br>    **• BRIAN MADRAZO**<br>    *[Each Under Separate Cover]*<br><br>**(6)  [PROPOSED] ORDER**<br>    *[Under Separate Cover]*<br><br>**DATE:      March 23, 2009**<br>**TIME:       1:30 p.m.**<br>**CTRM:      6**<br>**JUDGE:   Hon. Stephen V. Wilson** |

7357708.1

MOTION TO TRANSFER VENUE OF ACTION TO WESTERN DISTRICT OF NEW YORK

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| NOTICE OF MOTION | | v |
| REQUEST FOR JUDICIAL NOTICE | | vi |
| MEMORANDUM OF POINTS AND AUTHORITIES | | 1 |

I.     INTRODUCTION .......................................................................... 1

II.    STATEMENT OF FACTS ........................................................... 3

     A.     Plaintiffs And Their Attorneys ..................................... 3

     B.     Paychex's Business ........................................................ 4

     C.     Key Paychex Employee Witnesses ............................... 9

     D.     Access To Proof ............................................................ 12

     E.     Key Third Party Witnesses ......................................... 14

          1.     Bank Witnesses .............................................. 14

          2.     Accountants And Other Service Providers For Plaintiffs and Putative Class Members .............. 15

III.   THIS ACTION SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF NEW YORK ........................................ 16

     A.     Legal Standard Applicable To Motion To Transfer Venue .......... 16

     B.     This Action Could Have Been Brought In The Western District Of New York ...................................... 17

     C.     Paychex's Key Employee Witnesses Are Located In The Western District of New York ............................ 17

     D.     The Majority Of The Putative Class Members Are Located In The Eastern United States .......................... 20

     E.     The Key Third Party Witnesses Are Located In New York And On The East Coast .................................... 20

     F.     The Sources Of Proof Relevant To The Claims Alleged In The FAC Are Located In The Western District Of New York ....... 22

     G.     The Interests Of Justice Favor A Transfer Of This Action To The Western District Of New York Because Plaintiffs And The Putative Class Members Have Written Service Agreements With Paychex Which Have New York Choice Of Law And New York Arbitration Forum Selection Provisions ....... 23

**IV.  CONCLUSION** .............................................................**25**

**DECLARATION OF BETHANY PELLICONI** ...............................**26**

**MOTION TO TRANSFER VENUE OF ACTION TO WESTERN DISTRICT OF NEW YORK**

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>FEDERAL CASES</u>

*Decker Coal Co. v. Commonwealth Edison Co.*
805 F.2d 834 (9th Cir. 1986) ........................................................................ 24

*Evancho v. Sanofi-Aventis U.S., Inc.*
2007 WL 1302985 (N.D. Cal. 2007) ...................................................... 18, 19, 20

*Florens Container v. Cho Yang Shipping*
245 F.Supp.2d 1086 (N.D. Cal. 2002) ...................................................... 20

*Foster v. Nationwide Mut. Ins. Co.*
2007 WL 4410408 (N.D. Cal. 2007) ...................................................... 17, 18

*Freeman v. Hoffman-LaRoche Inc.*
2007 WL 895282 (S.D.N.Y. 2007) ...................................................... 19

*Hoefer v. U.S. Dept. of Commerce*
2000 WL 890862 (N.D. Cal. 2000) ...................................................... 18, 19

*International Shoe Co. v. Washington*
326 U.S. 310 (1945) ...................................................... 17

*Italian Colors Restaurant v. American Express Company*
2003 WL 22682482 (N.D. Cal. 2003) ...................................................... 23, 24

*Johns v. Panera Bread Co.*
2008 WL 2811827 (N.D. Cal. 2008) ...................................................... 16, 17

*Jones v. GNC Franchising, Inc.*
211 F.3d 495 (9th Cir. 2000) ...................................................... 16

*Lou v. Belzberg*
834 F.2d 730 (9th Cir. 1987) ...................................................... 16

*Saleh v. Titan Corporation*
361 F.Supp.2d 1152 (S.D. Cal. 2005) ...................................................... 20

*Silver Valley Partners, LLC v. De Motte*
2006 WL 2711764 (W.D. Wash. 2006) ...................................................... 24

**MOTION TO TRANSFER VENUE OF ACTION TO WESTERN DISTRICT OF NEW YORK**

*Teknekron Software Sys. Inc. v. Cornell Univ.*
   1993 WL 215024 (N.D. Cal. 1993) .................................................................. 19

*Van Dusen v. Barrack*
   376 U.S. 612 (1964) ...................................................................................... 16

*Waldmer v. SER Solutions, Inc.*
   2006 WL 314346 (D. Kan. 2006) .................................................................. 19

*Williams v. Bowman*
   157 F.Supp.2d 1103 (N.D. Cal. 2001) ........................................................... 16

## **FEDERAL STATUTES**

9 U.S.C.

   § 3 ........................................................................................................... 24,

   § 4 ........................................................................................................... 25

28 U.S.C.

   § 1332(d)(2)(A) ....................................................................................... 1, 17

   § 1391(a) ................................................................................................. 1, 17

   § 1404(a) .......................................................................................... 1, 15, 24, 16

Federal Rule Civil Procedure

      Rule 45(b)(2 ............................................................................................ 21

**MOTION TO TRANSFER VENUE OF ACTION TO WESTERN DISTRICT OF NEW YORK**

## NOTICE OF MOTION

**TO THE PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 23, 2009, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California 90012, Defendant PAYCHEX, INC. will and hereby does move the Court to transfer venue of this action to the Western District of New York on grounds of convenience pursuant to 28 U.S.C. § 1404(a).

This Motion is based on this Notice, the attached Request for Judicial Notice, Memorandum of Points and Authorities and Declaration of Bethany Pelliconi, the Declarations of David Vogt, John Byrne, Michael Deats, Rebecca Wagner, and Brian Madrazo filed concurrently herewith, the Court's file and records in this action, all matters which may be judicially noticed pursuant to Rule 201 of the Federal Rules of Evidence, and such other and further evidence and arguments as may be presented to the Court at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which Defendant's counsel attempted to initiate with Plaintiffs' counsel on February 4, 2009, who failed to engage in any such conference with Defendant's counsel. (*See* Pelliconi Decl., 1:5-19; Exhs. A, B.)

DATED: February 27, 2009      **McGuireWoods LLP**

By:     /s/ Matthew C. Kane
           Matthew C. Kane
           Bethany A. Pelliconi
        Attorneys for Defendant PAYCHEX, INC.

# REQUEST FOR JUDICIAL NOTICE

**TO THE HONORABLE STEPHEN V. WILSON AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**REQUEST IS HEREBY MADE**, pursuant to Rule 201 of the Federal Rules of Evidence, that the Court take judicial notice of the following documents in connection with Defendant Paychex, Inc.'s Motion to Transfer Venue To Western District of New York:

1.   Plaintiff Ironforge.com's Complaint filed in this action, a true and correct copy of which is annexed as Exhibit B to the attached Declaration of Bethany Pelliconi.

2.   First Amended Complaint filed in this action, a true and correct copy of which is annexed as Exhibit C to the attached Declaration of Bethany Pelliconi.

3.   Sections 1.8 and 2.1 of the 2008 Operating Rules of the National Automated Clearing House Association, a true and correct copy of which is annexed as Exhibit D to the attached Declaration of Bethany Pelliconi.

4.   Mapquest.com distance calculation from Shortsville, New York to Rochester, New York, a true and correct copy of which is annexed as Exhibit E to the attached Declaration of Bethany Pelliconi.

DATED: February 27, 2009      **McGuireWoods LLP**

By:    <u>/s/ Matthew C. Kane</u>
           Matthew C. Kane
           Bethany A. Pelliconi
      Attorneys for Defendant PAYCHEX, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant Paychex, Inc. ("Paychex") is a leading provider of payroll, human resources, and benefits outsourcing solutions for small to medium-sized businesses. Paychex's relationships with all of the Plaintiffs in this action are governed by written service agreements containing New York choice of law provisions and New York arbitration forum selection provisions.

Paychex's corporate headquarters and principle place of business are in Rochester, New York, and two of the three named Plaintiffs in this matter are also located in the Rochester, New York area.  Further, Plaintiffs are being represented in this action by attorneys from New York, virtually all of the key third party witnesses in this matter are located in New York or the eastern United States, and a majority of the putative class members are located in the eastern United States – with 24% in New York or in the nearby states of New Jersey and Pennsylvania. Notwithstanding, and in violation of the binding provisions of their service agreements with Paychex, Plaintiffs are attempting to bring this putative nationwide consumer class action asserting only claims under California law against Paychex in this Court venued in California.

As we discuss below, this action should be transferred to the **Western District of New York** pursuant to 28 U.S.C. § 1404(a), on grounds of convenience, for the following reasons:

1.  **Venue is proper in the Western District of New York** pursuant to 28 U.S.C. § 1391(a) because Paychex's ***principal place of business***, including its ***corporate headquarters***, is located in ***Rochester, New York***.  Therefore, Plaintiffs could have brought this action in the Western District of New York, which has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A).

The Complaint alleges that the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and that some members of the putative class are citizens of states different than Paychex.

2. **Virtually all of the key third party witnesses are located in New York or in the eastern United States**. Many of those third party witnesses are subject to compulsory process in the Western District of New York.

3. **All seven of Paychex's corporate offices are located in the greater Rochester, New York area**. This includes Paychex's corporate headquarters, which is located in Rochester, New York.

4. **All of Paychex's key employee witnesses** (who are identified herein and in the accompanying Declarations) **are located in the Rochester, New York area**.

5. **More than half (57%) of the putative class members are located in the eastern United States (with 24% in the New York area)**, whereas only about 18% are located in California.

6. **Sources of proof relevant to this action are stored on computer servers and in paper files physically located in Rochester, New York**. These sources of proof are not easily accessible elsewhere.

7. **All putative class members have written service agreements with Paychex that contain New York choice of law and Rochester, New York arbitration forum selection provisions.** Further, the electronic

funds transfer clearing house regulations which govern Paychex's processing of the transactions at issue in this action contain a New York choice of law provision.

8.    **Plaintiff Road Service, Inc. and the putative class members who have utilized Paychex's 401(k) and retirement record keeping services have Master Custody Agreements with JP Morgan Chase Bank which contain a New York choice of law clause.**  In addition, J.P. Morgan Chase Bank is located in New York.

9.    **Plaintiff's attorneys are located in New York**.   Only Plaintiff's nominal "Liaison Counsel" is located in California.

Therefore, Paychex's motion should be granted and this action should be ordered transferred to the Western District of New York.

## II.  <u>STATEMENT OF FACTS</u>

### A.    <u>Plaintiffs And Their Attorneys</u>

At the time the initial Complaint in this action was filed, there was only one named Plaintiff in this matter, Ironforge.com ("Ironforge").  (Doc. #1.)  In response to the Complaint, Paychex filed a Motion to Transfer Venue Of Action To Western District of New York (Doc. #9) and a Motion to Dismiss And/Or Strike Claims in Class Action Complaint (Doc. #10).[1]

---

[1]  Paychex filed Notices of Withdrawals, Without Prejudice, of these Motions (Doc. #16, Doc. #17) after the FAC was filed, so that new Motions could be filed with respect to the FAC.

Thereafter, on January 22, 2009, Plaintiff filed a FAC, which added a new claim and *two new parties who are both located in New York:* Handyman Home Solutions d/b/a/ Mr. Handyman of Eastern Monroe County, Inc. ("Handyman") and Road Service, Inc. ("Road Service"). (Exh. C.) As alleged in the FAC, Handyman is located in the same county as Paychex (Monroe County), and Road Service is located in "Shortsville, New York" (Exh. C, 3:19-4:5) which is approximately 30 miles from Paychex's Rochester, New York corporate offices. (Exh. E.) The FAC alleges that Road Service utilized Paychex's 401(k) services, whereas Ironforge and Handyman utilized Paychex's payroll services. (Exh. C, 14:18-19:9.)[2]

Plaintiffs' FAC asserts claims on behalf of themselves and a putative class of all persons similarly situated, defined as follows: "All persons in the United States who have been or currently are Paychex customers from January 22, 2003, to January 22, 2009." (Exh. C, 5:4-6.) The claims asserted in the FAC are based on Plaintiffs' allegations that Paychex "arbitrarily" increases fees, charges "small, undisclosed fees which customers never agreed to pay," "wrongly keeps interest" and/or "profit[s] by earning unjustified interest." (Exh. C, 1:19-20; 13:3; 14:3-5.)

Plaintiff is represented in this action by attorneys Yasmeen Allen and Craig Lanza of the Balestriere Lanza PLLC law firm in New York. (*See* Exh. C.) They only have nominal "Liason Counsel" in California. (*Id.*)

### B. Paychex's Business

Paychex is a leading provider of payroll, human resources, and benefits outsourcing solutions for small to medium-sized businesses. (Byrne Decl., 1:7-8; Wagner Decl., 1:6-7). Its corporate headquarters and principal place of business are

---

[2] Because one of the newly added Plaintiffs, Road Service, utilized Paychex's retirement record keeping services, Plaintiffs have *expanded* the potential putative class to include clients who received those services.

in Rochester, New York.  (Madrazo Decl., 1:4-6; Byrne Decl., 1:15-18.)  In addition to its corporate headquarters, Paychex has six other corporate offices in the Rochester, New York area.  (Byrne Decl., 1:15-18; Deats Decl., 1:5-7.)

Paychex offers its electronic payroll services (e.g., its Direct Deposit, Taxpay® and Readychex® services) to its clients through a batch-oriented electronic funds transfer ("EFT") system referred to as the "ACH Network" (ACH stands for "Automated Clearing House").  (Wagner Decl., 1:7-11; Deats Decl., 1:13-17.) Paychex also uses the ACH Network to debit funds for other services products, including its retirement record keeping services, Section 125 Plan, and insurance administration services ("Additional Services").  (Wagner Decl., 1:13-15.)  Most clients receiving electronic payroll and Additional Services pay their fees through an EFT payment.  (Wagner Decl., 1:15-17.)

The ACH Network is a payment network that uses national standards for clearing interbank EFT payments between customers of participating depository financial institutions.  (Wagner Decl., 1:10-12; Byrne Decl., 1:12-14.)  It is governed by rules promulgated and enforced by the National Automated Clearing House Association ("NACHA"), which itself is governed by depository financial institutions. (Wagner Decl., 1:18-21.)  The Federal Reserve Bank and the Electronic Payments Network act as ACH Operators, which are central clearing facilities through which financial institutions transmit or receive ACH payment transactions. (Deats Decl., 1:17-19; Vogt Decl., 1:12-14.)

Paychex requires that all of its electronic payroll services and Additional Services clients sign written services agreements which are expressly governed by the laws of the State of New York, and provide for binding arbitration in Rochester, New York.  (Byrne Decl., 3:27-4:7.)  For example, the service agreements executed by Plaintiffs Ironforge.com and Handyman provide in relevant part as follows:

**MOTION TO TRANSFER VENUE OF ACTION TO WESTERN DISTRICT OF NEW YORK**

"**Governing Law and Arbitration.** The Agreement shall be governed by the laws of the State of New York. Except as provided herein, any dispute arising out of, or in connection with, the Agreement shall be determined by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association. . . ." (Byrne Decl., Exh. A, at ¶ 11, Exh. B, at ¶ 18.)

The service agreement between Paychex and Roadservice also contains a provision requiring application of New York law to disputes between the parties, and a provision requiring binding arbitration in Rochester, New York:

"The Agreements shall be governed by the laws of the State of New York. Except as provided herein, any dispute arising out of or in connection with the Agreements shall be determined by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association . . ." (Byrne Decl., Exh. C, at ¶ 9.)

The retirement services agreement between Paychex and Road Service likewise contains a New York choice of law provision, and a provision requiring disputes to be determined by binding arbitration in Rochester, New York:

"**Governing Law and Arbitration**: The Agreement shall be governed by the laws of the State of New York, to the extent not preempted by ERISA.[3]  Except as provided herein, any dispute arising out of, or in connection with, the Agreement shall be determined by binding arbitration in Rochester, New York, in accordance with the commercial rules of the American Arbitration Association."  (Byrne Decl., Exh. D, at ¶ 32.)

Paychex's clients who utilize its retirement record keeping services are also required to execute a "Master Custody Agreement" with JP Morgan Chase Bank ("JP Morgan"), the custodian of the account which is located in New York, which also contains a New York choice of law clause.  (Byrne Decl., 4:8-14.)  The Master Custody Agreement between JP Morgan and Road Service provides in pertinent part as follows:

20.    **Miscellaneous.**   This Agreement shall be governed by the laws of the State of New York."  (Byrne Decl., Exh. E.)

---

[3] In Paychex's Motion to Dismiss, filed concurrently herewith, Paychex takes the position that the claims asserted by Plaintiff Road Service are preempted by ERISA. Paychex anticipates that Plaintiffs will take a contrary position in opposition to the Motions.  To the extent that Plaintiffs do so, they thereby concede that New York law must be applied to any claims asserted by Road Service, as required by paragraph 32 of the retirement services agreement, because that paragraph provides for application of New York law as to all claims not preempted by ERISA.

In addition, the rules promulgated by NACHA, which govern both Paychex and its clients that utilize EFT payment services for payroll and retirement record keeping, are expressly incorporated into the Paychex service agreements in accordance with NACHA rules.  For example, the service agreement which was executed by Ironforge provides in relevant part:

> "**4. Electronic Funds Transfers.**  All EFTs are performed in compliance with the National Automated Clearing House Association operating rules ("NACHA").  Client agrees to follow and be bound by NACHA as they are amended from time to time and assumes the responsibilities of an initiator of EFTs. . . ."  (Byrne Decl., Exh. A, at ¶ 4; *see also* Exh. D [NACHA Rule 2.1].)

The service agreements executed by Handyman and Road Service likewise incorporate the NACHA rules:

> "**Electronic Funds Transfer**.  * * * All EFTs are performed in compliance with the National Automated Clearing House Association operating rules ("NACHA").  Client agrees (i) to follow NACHA, as they are amended from time to time; (ii) that it will not initiate any EFT that violates any law; and (iii) that Paychex may identify Client to banks involved in the EFT."  (Byrne Decl., Exh. B at ¶ 9, Exh. C, at ¶24.)

The NACHA rules, which Plaintiffs and the putative class members "agree[] to follow", likewise contain a New York choice of law provision:

> SECTION 1.8 <u>Choice Of Law</u>
>
> These rules and the rights and obligations of a party with regard to a credit entry subject to Article 4A shall be construed in accordance with and governed by the laws of the State of New York, unless otherwise provided in an agreement of such party. (*See* Exh. D.)

## C. <u>Key Paychex Employee Witnesses</u>

All of Paychex's corporate decisions are made by its authorized employees who work in its corporate offices located in the Rochester, New York area, and all of its policies and procedures are created and disseminated from those offices. (Byrne Decl., 2:24-3:6.) Such decisions, policies, and procedures include (1) procedures for providing client payroll processing services, (2) protocols for handling client complaints, (3) setting pricing and fees for client services, (4) client billing guidelines, (5) protocols for discounting fees for client services, (6) client service agreement provisions, (7) protocols for the timing of transmitting ACH transaction batch files for each service that Paychex provides, (8) protocols for handling interest income earned on client funds held in Paychex's corporate accounts, (9) creation of training materials for sales representatives, and (10) creation of corporate marketing and advertising materials. (*Id.*)

While Paychex branch office personnel provide some services to clients, the actual debiting of funds from client bank accounts for electronic payroll services and Additional Services is performed by Paychex corporate office employees located in Rochester, New York. (*Id.*, 3:6-9.) Further, Additional Services such as retirement

record keeping are all provided to clients by Paychex corporate office employees located in the Rochester, New York area. (*Id*., at 3:9-11.)

Paychex's corporate employees who would testify about and/or be involved with the defense of the claims alleged in the FAC are all located in the Rochester, New York area. These employees include the following individuals:

1. **David Vogt, Paychex's Manager Treasury Operations**. Mr. Vogt is responsible for managing: (1) Paychex's Cash Management Group, which is responsible for the daily cash management process that determines the cash positions in Paychex's bank accounts; (2) Paychex's Client Funds Accounting Group; and (3) Paychex's bank relationships for its corporate and operating accounts. By virtue of his position, Mr. Vogt would be able to testify on behalf of Paychex about client fund accounting and records pertaining thereto, interest earned on client funds, and interactions between Paychex and the banks which process its clients' ACH transactions. (Vogt Decl., 1:16-3:5; Madrazo Decl., 2:11-13.)

2. **John Byrne, Paychex's Manager of Strategic Operations.** Mr. Byrne is the "Lead Data Owner" of Paychex's core payroll product and billing systems. He would testify on behalf of Paychex about the records stored in Paychex's core payroll and online repository systems, which store client documents in automated databases on its computer servers physically located in Rochester, New York. Mr. Byrne would also testify about Paychex's corporate policies and procedures, including those relating to processing client payroll services, client service

agreements, and setting pricing and fees for client services. (Byrne Decl., 1:21-4:14; Madrazo Decl., 2:3-5.)

3.    **Rebecca Wagner, Paychex's HRS Analyst III**.  Ms. Wagner is responsible for ensuring Paychex's operations are in compliance with all applicable banking and NACHA regulations.  She also handles client disputes where a client believes charges for Paychex's services were not authorized.  Ms. Wagner would testify about Paychex's compliance with banking regulations and NACHA rules, protocols used by Paychex for the timing of client bank account debit transactions and the timing of related payroll check and tax remittance payments made by Paychex on behalf of clients with their debited funds.  She would also testify about the protocols used by Paychex for handling complaints from clients about purported unauthorized fees and transactions. (Wagner Decl., 1:3-2:8; Madrazo Decl., 2:6-7.)

4.    **Michael Deats, Paychex, Inc.'s ENS Product and Opertions Manager**.    Mr. Deats is responsible for supervising and managing Paychex's Electronic Network Services ("ENS") Product and Operations Department.  That department monitors incoming files containing payroll instructions for Paychex's client accounts nationwide, and ensures that the ACH files containing those instructions are received by Paychex's partner banks, which, in turn, transmit the instructions to the clients' and/or their employees' banks and the banks of various state and federal agencies.    Mr. Deats would testify about Paychex's payroll operations, monitoring of incoming payroll files

containing payroll instructions for Paychex, Inc.'s clients nationwide, and procedures for ensuring that the ACH files containing payroll instructions are received by Paychex, Inc.'s partner banks.  (Deats Decl., 1:3-2:19; Madrazo Decl., 2:8-10.)

5.   **Neil Rohrer, Director of Marketing**.  Mr. Rohrer would testify about Paychex's marketing policies, protocols, and marketing materials distributed to clients.  (Madrazo Decl., 2:2:14-16.)

6.   **Joni McManus, Advertising Manager**.  Ms. McManus would testify about Paychex's advertising policies, procols, and advertising materials distributed to clients.  (Madrazo Decl., 2:17-19.)

7.   **Kimberly Kelly, Training Center Director**.  Ms. Kelly would testify about the training of Paychex's sales representatives. (Madrazo Decl., 2:20-22.)

8.   **Brian Madrazo, Paychex's In-House Corporate Counsel**.  Mr. Madrazo is not a witness in this matter, but he is responsible for managing this litigation, and he resides and works in the Rochester, New York area.  (Madrazo Decl., 1:2-26.)

D.   <u>**Access To Proof**</u>

Paychex currently has more than 550,000 clients that utilize payroll services and over 45,000 that receive retirement record keeping services.  (Byrne Decl., 2:6-8.)  More than half (57%) of those clients (i.e., the putative class members alleged in the Complaint) are located in the eastern United States, with approximately 24%

located in New York or in the nearby states of New Jersey and Pennsylvania. (*Id.*, 2:6-9.) In contrast, only about 18% of the putative class members are located in California. (*Id.*, 2:6-10.)

Virtually all of Paychex's records on these clients (and any clients receiving Additional Services such as 401(k) services), including records pertaining to invoicing, the debiting of funds from client accounts and the remittance of funds to client employees and tax authorities, are maintained in separate electronic databases which are stored on Paychex's computer servers physically located in the Rochester, New York area. (*Id.*, 2:6-16; 3:13-15.) These records include client service agreements and new account documents, client complaints about purported unauthorized transactions, and records reflecting ACH transactions processed on behalf of clients. (*Id.*, 2:16-18.) Access to these databases is generally not available to Paychex employees located outside of its corporate offices in the Rochester, New York area, except for certain employees who have limited access to only portions of the databases for specified purposes. (*Id.*, 19-22.)

In addition, Paychex's corporate banking records are all stored on its computer servers physically located in the Rochester, New York area as well. (Vogt Decl., 2:21-3:5.) Paychex's client banking records are likewise physically located exclusively in the Rochester, New York area. (*Id.*) All of Paychex's corporate records relating to retirement plan services, including electronic records, invoices, service agreements, basic plan documents, adoption agreements, summary plan descriptions and records pertaining to communications with clients who receive these services, are located in the Rochester, New York area. (*Id.*, Byrne Decl., 3:22-26.)

### E.    <u>Key Third Party Witnesses</u>

#### 1.    Bank Witnesses

Paychex processes its clients' ACH transactions primarily through the Operational Centers of Bank of America, Wells Fargo Bank, PNC Bank, and JP Morgan. (Vogt Decl., 2:2-4.) Bank of America also sponsors Paychex to send ACH files directly to the Electronic Payment Network ("EPN").[4] (Vogt Decl., 2:4-5.) The primary Operational Centers for these financial institutions are located in Florida, Pennsylvania, Minnesota, Virginia, and North Carolina; only one is located in California (San Francisco). (Vogt Decl., 2:8-10). JP Morgan is the custodian for all clients of Paychex that utilize Paychex's retirement record keeping services, and all such clients are required to enter into Master Custody Agreements with JP Morgan, which is located at 450 W. 33rd Street, 10th Floor, New York, NY 10001. (Byrne Decl., 3:27-4:7, Exh. E, at ¶ 21.)

Of these financial institutions, JP Morgan, PNC Bank, Wells Fargo Bank, and Bank of America each have a "Relationship Officer" who oversees all aspects of its interactions with Paychex, including management of the service agreements pertaining to ACH transactions, opening and closing of accounts and services, credit needs, treasury services, and operational issue resolution. (*Id.*, 2:11-15.) The Relationship Officers for JP Morgan and Bank of America are both located in Rochester, New York. (*Id.*, 2:17-18.) The Relationship Officer for Wells Fargo Bank is located in New York City, and the Relationship Officer for PNC Bank is located in Greenwich, Connecticut. (*Id.*, 2:18-20).

Employees from the Operational Centers of these financial institutions, and their Relationship Officers, would likely be called upon to testify in this action about their interactions with Paychex concerning ACH transactions and whether any of the

---

[4] EPN is comprised primarily of financial institutions and is the only private-sector ACH Operator in the country. (Vogt Decl., 2:5-6.)

transactions at issue in this action involved errors on the part of their financial institutions. Indeed, Ironforge alleges in the FAC that one of its own representatives had several conversations with Wells Fargo Bank about stopping the alleged unauthorized transactions in his account and that Ironforge's representative discussed with a Wells Fargo Bank representative whether the transactions were a result of the bank's error. (*See* Exh. C, 15:5-16.)

### 2. Accountants And Other Service Providers For Plaintiffs and Putative Class Members

According to the allegations in the FAC, various service providers for the Plaintiffs are percipient witnesses in this matter. In particular, the FAC alleges that Handyman "hired an accountant" to review the company's financial records "to assess the extent of [Paychex's] improper withdrawals" and that the accountant spoke with a Paychex representative about it. (Exh. C, 18:15-19:4.) Likewise, the FAC alleges that Road Service "contacted his 401(k) provider" who notified him that "none of [the funds withdrawn by Paychex] were transferred towards his retirement plan as indicated by Paychex." (Exh. C, 17:9-13.) Because Handyman and Road Service are located in the Rochester, New York area, these service providers likely are also located in that area as well. Further, based on Plaintiffs' allegation that Paychex's "typical customers are small to medium-sized businesses that do not have the time or resources to set up in-house payroll systems" (Exh. C, 2:12-14), it is likely that the putative class members also utilized third party accountants and other service providers that would be witnesses in this matter, and that they are located in close proximity to the putative class members who hired them – i.e., a majority located in the eastern United States, with 24% located in New York and the nearby states of New Jersey and Pennsylvania.

# III. THIS ACTION SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF NEW YORK

## A. Legal Standard Applicable To Motion To Transfer Venue

28 U.S.C. § 1404(a) provides as follows:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The purpose of this statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). A motion to transfer the venue of an action lies within the broad discretion of the district court and is to be determined on an individualized, case by case basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

The following factors are to be considered by a district court in deciding whether to grant a motion to transfer venue under 28 U.S.C. § 1404(a):

(1) the plaintiff's choice of forum (which is entitled to only "minimal consideration" in a class action lawsuit);[5]

(2) the convenience of the parties and witnesses;

(3) the ease of access to sources of proof;

(4) familiarity of each forum with the applicable law;

(5) feasibility of consolidation with other claims;

(6) local interest in the controversy; and

(7) relative court congestion.

---

[5] *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

*See Lou v. Belzberg*, 834 F.2d at 739; *Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001); *Johns v. Panera Bread Co.*, 2008 WL 2811827 (N.D. Cal. 2008).

### B.  This Action Could Have Been Brought In The Western District Of New York

The Western District of New York has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). Plaintiff's Complaint alleges that the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and that some members of the putative class are citizens of states different than Paychex. (*See* Exh. C, 3:6-8.)

Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(a) because Paychex's principal place of business, including its corporate headquarters, is located in Rochester, New York. *See, e.g., International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (for venue purposes, a corporation resides in all districts in which it is subject to personal jurisdiction).

Moreover, Plaintiffs are represented by attorneys in New York who either are admitted or could gain full admission (rather than being admitted *pro hac vice*) to the Western District of New York bar.  (*See* Exhibit C.)  Plaintiffs only have nominal "Liaison Counsel" located in California. (*Id.*)

### C.  Paychex's Key Employee Witnesses Are Located In The Western District of New York

In deciding whether to grant motions to transfer venue in class action lawsuits, district courts in the Ninth Circuit have uniformly held that the convenience of witnesses warrants granting the motion where, as here, the defendant's corporate headquarters and corporate witnesses are located in another jurisdiction, especially if a large number of the putative class members are located

outside of the chosen jurisdiction. *See Johns v. Panera Bread Co.*, 2008 WL 2811827 *3 (N.D. Cal. 2008) (granting motion to transfer venue in wage and hour class action to place of defendant's corporate headquarters); *Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408 *4-5 (N.D. Cal. 2007) (granting transfer of FLSA and state wage and hour class action on grounds of convenience where defendant's corporate headquarters and many witnesses located in proposed transferee district); *Hoefer v. U.S. Dept. of Commerce*, 2000 WL 890862 (N.D. Cal. 2000) (granting motion to transfer on grounds of convenience in class action alleging illegal taxes where defendants' headquarters were in Washington and "crucial witnesses" were located there). *See also Evancho v. Sanofi-Aventis U.S., Inc.*, 2007 WL 1302985 *3 (N.D. Cal. 2007) (convenience of parties and witnesses favored transfer where large number of critical witnesses live and work in New Jersey, and greater proportion of putative class members live and work on east coast as compared to west coast).

In *Foster v. Nationwide Mutual Ins. Co*., the court granted a motion to transfer venue to the Southern District of Ohio based on facts and circumstances similar to those which exist in this action. The plaintiffs had filed a putative wage and hour class action in the Northern District of California because one of the named plaintiffs lived there, the defendant had California offices, and a majority of the plaintiffs who had opted-in resided on or near the West Coast. The defendant moved to transfer venue to the Southern District of Ohio, which was the location of its corporate headquarters and of its management-level employees who were likely to testify at trial. In granting the motion to transfer venue, the court reasoned that:

> "Defendant asserts that the Southern District of Ohio will be more convenient for both parties and witnesses. The Court agrees. Defendant's corporate headquarters is located in Columbus, Ohio, as are many of the witnesses defendant would likely call to testify at trial. For instance,

most of defendant's management-level employees who oversee the special investigators or work in human resources are based in Ohio; others work in Iowa and Florida, making Ohio more convenient for them as well." 2007 WL 4410408, at * 4.

*See also Hoefer v. U.S. Dept. of Commerce, supra* (noting, in granting motion to transfer venue, that "[l]itigation should proceed where the case finds its 'center of gravity,'" which was the location of the defendants' corporate offices and headquarters) (citing *Teknekron Software Sys. Inc. v. Cornell Univ.*, 1993 WL 215024 (N.D. Cal. 1993)); *Evancho v. Sanofi-Aventis U.S. Inc.*, *supra*, 2007 WL 1302985 *3 (granting motion to transfer venue to New Jersey where "a large number of critical witnesses live and work in New Jersey, and a greater proportion of the putative class members live and work on the east coast than on the west coast"); *Freeman v. Hoffman-LaRoche Inc.*, 2007 WL 895282 *2 (S.D.N.Y. 2007) (location of defendant's corporate witnesses was important factor in deciding motion to transfer venue); *Waldmer v. SER Solutions, Inc.*, 2006 WL 314346 (D. Kan. 2006) (noting, in granting motion to transfer venue to Virginia, that "the logical origin of this dispute is Virginia. It was at the company's headquarters in Virginia [where defendant's] personnel made and implemented the decision [at issue]. No company policies were ever established in Kansas.")

Here, as in the foregoing cases, the location of Paychex's employee witnesses and of putative class members favors a transfer of this action to the Western District of New York. All of Paychex's corporate witnesses are located in the Rochester, New York area, which is the location of its corporate headquarters and principal place of business. (Byrne Decl., 1:5-6; 1:15-18; 2:24-26; Madrazo Decl., 1:3-6, 1:27-2:24.) In addition to the Paychex employee witnesses identified above and who can be expected to testify about the claims alleged in the Complaint, virtually

any other Paychex employee who would testify in this action is located at its corporate offices in the Rochester, New York area. (*Id;* Deats Decl., 1:3-7, 1:21-2:19; Vogt Decl., 1:3-6, 1:16-2:1, 2:21-3:2 .) Thus, it would be more convenient for these witnesses if the trial of this action occurred in the Western District of New York.

## D. <u>The Majority Of The Putative Class Members Are Located In The Eastern United States</u>

Further, the majority of Paychex's payroll services clients (57%), who are the putative class members in this action (as alleged in the Complaint), are located in the eastern United States, and 24% of them are located in New York and in the nearby states of New Jersey and Pennsylvania. (Byrne Decl., 2:6-11.) In contrast, only about 18% of those putative class members are located in California. (*Id.*, 2:8-10.) Therefore, it would be more convenient for the putative class members if the trial of this matter were to take place in the Western District of New York as well. *See Evancho v. Sanofi-Aventis U.S. Inc.*, *supra,* 2007 WL 1302985 *3 (granting motion to transfer venue to New Jersey where "a large number of critical witnesses live and work in New Jersey, and a greater proportion of the putative class members live and work on the east coast than on the west coast").

## E. <u>The Key Third Party Witnesses Are Located In New York And On The East Coast</u>

The convenience and location of key third party witnesses is one of the most important factors in deciding whether to grant a motion to transfer the venue of an action on grounds of convenience. *See Saleh v. Titan Corporation,* 361 F.Supp.2d 1152, 1160 (S.D. Cal. 2005); *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (N.D. Cal. 2002).

Here, the most critical third party witnesses are the Relationship Officers and the Operations Center employees from the financial institutions which process Paychex's clients' electronic payroll transactions. (*See* Vogt Decl., 2:2-25.) These third party witnesses can be expected to testify about ACH transactions involving Paychex and its clients, instructions transmitted by Paychex with respect to those transactions, and whether any of the transactions at issue in this action constituted mistakes by their financial institutions. (*Id.*) Indeed, the FAC alleges that Ironforge's own representative had communications of this nature with a representative of Wells Fargo Bank. (*See* Exh. C, 12:25-13:13.)

The Relationship Officers at these financial institutions are located in Rochester, New York, New York City, and Greenwich, Connecticut. As such, if this action is transferred to the Western District of New York, it would be more convenient for these third party witnesses and most of them would be subject to compulsory process by subpoena. *See* Fed.R.Civ.Proc. Rule 45(b)(2) (for nonparty witnesses, the court's subpoena power extends to any place within the district and/or within 100 miles of the place of trial). The Operations Center employees at these financial institutions are located in Florida, Pennsylvania, Virginia, and North Carolina; only one of the Operations Centers is located in California (San Francisco). (Vogt Decl., 2:2-10.)

In addition to the third party bank representatives, the location of third party service providers used by Plaintiffs and the putative class members also favors a transfer of this action to the Western District of New York. Indeed, the FAC alleges that Handyman "hired an accountant" to review the company's financial records "to assess the extent of [Paychex's] improper withdrawals" and that the accountant spoke with a Paychex representative about it. (Exh. C, 18:15-19:4.) Likewise, the FAC alleges that Road Service "contacted his 401(k) provider" who notified him that "none of [the funds withdrawn by Paychex] were transferred towards his retirement plan as indicated by Paychex." (Exh. C, 17:9-13.) Because Handyman

and Road Service are located in the Rochester, New York area, these service providers likely are also located in that area, and the third party witnesses who provided services to the putative class members also likely would be located in close proximity to the putative class members who hired them - i.e., a majority located in the eastern United States, with 24% located in New York and in the nearby states of New Jersey and Pennsylvania.

As such, the Western District of New York also would be a much more convenient forum for third party witnesses as compared to California.

**F.    The Sources Of Proof Relevant To The Claims Alleged In The FAC Are Located In The Western District Of New York**

Virtually all of Paychex's corporate and client records and documents are maintained in separate databases stored on its computer servers physically located in the Rochester, New York area.  (Byrne Decl., 2:12-3:12; Deats Decl., 2:5-19; Vogt Decl., 2:21-3:5; Wagner Decl., 2:1-8.)

These records include client service agreements and new account documents, records pertaining to the electronic payroll services and Additional Services actually provided to clients, client complaints about purported unauthorized transactions, records reflecting ACH transactions processed on behalf of Paychex clients, corporate policies, procedures, and protocols for processing client payroll services, banking records reflecting the interest earned by Paychex on its cash positions, client banking records, corporate banking records and advertising and marketing materials.  (*Id.*)

All of these records and documents would likely be key sources of proof on issues raised in the FAC as to whether the transactions were authorized, whether misstatements were made concerning fees, and the timing of the debit and credit transactions at issue.  (See Exh. A, 1:6-2:14; 6:13-14:6.)   Access to Paychex's records is generally not available to Paychex employees outside of its corporate

offices in the Rochester, New York area, except for certain employees who have limited access to portions of Paychex's databases for specified purposes. (Byrne Decl., 2:20-23.)

Due to the sheer volume and location of Paychex's records maintained in separate restricted-access databases for over a half million of its clients, and of related and additional hard copy evidence, it is axiomatic that principles of convenience favor a transfer of this action to the Western District of New York. *See, e.g., Italian Colors Restaurant v. American Express Company*, 2003 WL 22682482 (N.D. Cal. 2003) (granting motion to transfer venue to district where defendant's principal place of business was located because "the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found.").

As such, the Western District of New York is also a more convenient forum for access to the relevant sources of proof in this action.

**G.** **The Interests Of Justice Favor A Transfer Of This Action To The Western District Of New York Because Plaintiffs And The Putative Class Members Have Written Service Agreements With Paychex Which Have New York Choice Of Law And New York Arbitration Forum Selection Provisions**

All of Paychex's clients who utilize its electronic payroll services or Additional Services such as retirement record keeping services, which require Paychex to debit funds from the client's bank account (i.e., Plaintiffs and all of the putative class members as alleged in the FAC), are required to sign written service agreements with Paychex that contain a New York choice of law provision, and that provide for binding arbitration in Rochester, New York. (*Byrne* Decl., 3:22-4:6; Exh. A, at ¶ 11; Exh. B, at ¶ 18; Exh. C, at ¶ 9.) Clients that utilize Paychex's retirement record keeping services are also required to enter into a Master Custody

Agreement with JP Morgan in New York, and that Master Custody Agreement also contains a New York choice of law provision. (Byrne Decl., Exh. D.) Paychex's services agreements incorporate the NACHA rules governing Paychex's processing of the ACH transactions at issue in this action, which likewise contain a New York choice of law provision. (*See* Exhibit D; Byrne Decl., 3:27-4:7; Exh. A, at ¶ 11; Exh. B, at ¶ 18; Exh. C, at ¶ 9.)

These factors weigh in favor of granting a transfer of this action to the Western District of New York. Indeed, as courts have noted, the existence of a contractual choice of law provision is a significant factor which favors granting a motion to transfer venue brought under 28 U.S.C. § 1404(a). *See Italian Colors Restaurant v. American Express Company*, 2003 WL 22682482 (N.D. Cal. 2003); *Silver Valley Partners, LLC v. De Motte*, 2006 WL 2711764 (W.D. Wash. 2006).

In addition, the Western District of New York would likely be more familiar with New York law, which must be applied in this action. (*See* Exhibit D; Byrne Decl., Exh. A, ¶ 11; Exh. B, at ¶ 18; Exh. C, at ¶ 9.) This factor also favors granting a transfer of this action to the Western District of New York. *See, e.g., Silver Valley Partners, LLC v. De Motte*, *supra* (noting that district court where action would be transferred to would be more familiar with the applicable law of the state in which it is located). *See also Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834 (9th Cir. 1986) (diversity case should be litigated "in a forum that is at home with the law that must govern the action").

Further, Plaintiffs and each of the individual putative class members have agreed to arbitrate their purported claims in Rochester, New York in accordance with the arbitration provision in Paychex's service agreements with them. (Byrne Decl., 3:27-4:7, Exh. A, at ¶11; Exh. B, at ¶ 18; Exh. C, at ¶ 9.) Under the Federal Arbitration Act, the Western District of New York would have jurisdiction to hear and decide petitions to compel arbitration of their claims. *See* 9 U.S.C. § 4 ("[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate

under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"). Likewise, New York law would have to be applied to resolve any challenges to enforcement of the arbitration agreements. *See* 9 U.S.C. § 3 ("[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Thus, principles of judicial economy and efficiency also would be better served if these arbitration issues are addressed and resolved by the Western District of New York.

## IV.   CONCLUSION

For all of the foregoing reasons, Paychex respectfully requests that this motion be granted and that this action be ordered transferred to the Western District of New York.

DATED:  February 27, 2009        **McGuireWoods LLP**


By:   /s/ Matthew C. Kane
Matthew C. Kane
Bethany A. Pelliconi
Attorneys for Defendant PAYCHEX, INC.

# DECLARATION OF BETHANY PELLICONI

I, Bethany Pelliconi, declare as follows:

1.     I am currently employed as Counsel in the law firm McGuireWoods LLP, counsel for Defendant Paychex, Inc. in this matter.

2.      In accordance with Local Rule 7-3 of this Court on February 4, 2009, I sent a meet and confer letter by email to counsel for the Plaintiff in this matter, Craig Stuart Lanza, setting forth the basis for this Motion to Transfer Venue to the Western District of New York.  Attached hereto as Exhibit A is a true and correct copy of that letter and email.   As set forth in that meet and confer letter, the basis for this motion was the same as that of a previous Motion to Transfer Venue to the Western District of New York which Paychex filed in response to the initial Complaint, and then withdrew without prejudice after the Plaintiffs filed a First Amended Complaint.  I had previously written to Mr. Lanza in an attempt to meet and confer with respect to the initial Motion to Transfer Venue to the Western District of New York, but he did not respond.  Likewise, Mr. Lanza did not respond to my February 4, 2009 letter regarding this Motion.

3.     Attached hereto as Exhibit B is a true and correct copy of the Complaint on file in this matter.

4.     Attached hereto as Exhibit C is a true and correct copy of the First Amended Complaint on file in this matter.

5.     Attached hereto as Exhibit D is a true and correct copy of Sections 1.8 and 2.1 of the "2008 ACH Operating Rules" which I received from the National Automated Clearing House Association ("NACHA").

6.     Attached hereto as Exhibit E is a true and correct copy of a distance calculation from Shortsville, New York to Rochester, New York from the Internet website Mapquest.com.

7.      I am over 18 years of age.  I have personal knowledge of the facts set

forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently and truthfully testify thereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed February 27, 2009, at Los Angeles, California.

_____
Bethany Pelliconi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28