UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IRONFORGE.COM
Individually and for all others
similarly situated,
ROAD SERVICE, INC.
individually and for All Service Inc.,
HANDYMAN HOME SOLUTIONS, INC.
individually and for all others similarly situated,


                              Plaintiff,

                                                    DECISION AND ORDER

                                                    09-CV-6264L


               v.

PAYCHEX, INC.,


                              Defendant.
_____

        This action was commenced in October 2008 by plaintiff Ironforge.com ("Ironforge") in the

United States District Court for the Central District of California in October 2008, against defendant

Paychex, Inc.  That court transferred the action to this district in May 2009, pursuant to 28 U.S.C.

§ 1404(a).

        In January 2009, Ironforge filed the first amended complaint ("FAC"), which, *inter alia*,

added two additional plaintiffs, Handyman Home Solutions d/b/a Mr Handyman of Eastern Monroe

County, Inc. ("Handyman"), and Road Service, Inc.  Plaintiffs assert several claims against Paychex,

on behalf of themselves and "[a]ll persons in the United States who have been or currently are Paychex customers from January 22, 2003, to January 22, 2009 ... ." FAC (Dkt. #18) ¶ 13.

The FAC alleges that Paychex is in the business of providing payroll and human resources services for small- to medium-size companies, and that plaintiffs are or have been clients of Paychex. Plaintiffs assert claims for breach of contract, fraud, and various other torts, and violations of federal and California statutes, based on allegations that Paychex has charged plaintiffs unjustified, unauthorized, hidden fees. Plaintiffs also allege that Paychex has unlawfully profited from interest earned on funds that Paychex held on plaintiffs' behalf to use for satisfaction of plaintiffs' payroll, tax and related obligations.

Paychex has filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #26), as well as an alternative motion to strike certain claims (Dkt. #27). Those motions were filed prior to the transfer of this action from California to this district. Having heard oral argument on defendants' motions, the Court grants in part and denies in part the motion to dismiss, and denies in its entirety the motion to strike.[1]

_____

[1]Also prior to transfer, plaintiffs filed a motion to certify the class (Dkt. #11). The parties subsequently stipulated to a continuance as to that motion, in part because a decision on the motion to dismiss could moot the class certification motion. Dkt. #37, #40.

Although, in general, courts have held that issues relating to class certification should be decided before a decision on the merits is rendered, *see, e.g.*, *Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007); *Philip Morris Inc. v. National Asbestos Workers Medical Fund*, 214 F.3d 132, 135 (2d Cir. 2000), a defendant can waive its right to have class certification issues decided first, by moving for a decision on the merits before a decision has been reached on class certification. *See Mendez v. The Radec Corp.*, 260 F.R.D. 38, 45 (W.D.N.Y. 2009); *see, e.g.*, *Drnek v. City of Chicago*, 192 F.Supp.2d 835, 837 (N.D.Ill. 2002). Defendant has elected to do so here, and the Court finds it appropriate to decide the motion to dismiss before reaching the issue of class certification.

# BACKGROUND

According to the complaint, Paychex offers payroll and related administrative and tax assistance to small businesses across the United States. A Paychex client typically delegates most of its tasks in those areas to Paychex, including calculation, preparation and delivery of employee checks, as well as preparation and payment of payroll taxes. The client gives Paychex access to the client's and the client's employees' financial data, to enable Paychex to perform those tasks. Paychex's revenue is derived from several sources, including fees for its services, as well as interest earned on funds held for its clients between the time that the funds were collected from the clients and the time that the funds were paid out to the appropriate tax or regulatory agencies, or to the clients' employees.

As stated, all the plaintiffs have contracted with Paychex to provide payroll and other services. The complaint alleges that Ironforge began its contractual relationship with Paychex on or around March 28, 2003, and cancelled Paychex's services in June 2007. FAC ¶ 36. The complaint does not appear to state precisely when Road Service and Handyman contracted with Paychex, though it does allege that Rikk Foringer, the owner of Road Service, discovered at some point that Paychex had engaged in certain allegedly wrongful acts in January and February 2008. FAC ¶ 48.

Plaintiffs allege that Paychex engages in several forms of fraud with respect to its clients. First, they allege that Paychex "skims" money from its clients' accounts by charging unjustified, undisclosed fees. FAC ¶ 28. The complaint is short on specifics about exactly how Paychex does this. As alleged "examples," however, the FAC sets forth a number of comments posted on an internet site, www.epinions.com, where individuals have complained about alleged overcharges and excessive fees imposed by Paychex. FAC ¶ 29. Plaintiffs also quote a similar complaint found an a

website entitled, "Companies that Suck." FAC ¶ 30. None of the authors of those complaints are identified in the FAC, and it appears that many, if not all of the complaints were posted anonymously.

Plaintiffs also allege that Paychex wrongfully keeps for itself interest earned on its clients' funds, which are temporarily held by Paychex pending disbursement of those funds to the clients' employees or government agencies, to satisfy the clients' payroll, tax or related obligations. Plaintiffs allege that Paychex withdraws those funds sooner than necessary, or holds them for longer than necessary, in order to generate more interest for itself.[2] For example, plaintiffs allege that Paychex withdraws clients' money to pay the clients' taxes months before the taxes are due, so that Paychex can earn interest on those funds. FAC ¶¶ 31-34.

With regard to these particular plaintiffs, the complaint alleges that Paychex has made unauthorized withdrawals from Ironforge's bank account totaling over $1000. FAC ¶ 35. Some of those withdrawals are alleged to have occurred after Ironforge terminated Paychex's services in June 2007. FAC ¶¶ 37-39.

Plaintiffs also allege that in January and February 2008, Paychex withdrew at least $850 from Road Service's bank account, ostensibly to be put towards Foringer's 401(k) plan. Plaintiffs allege that those funds never were transferred to Foringer's 401(k) plan, and that they remain unaccounted for to this day. FAC ¶¶ 46-48.

As to Handyman, the complaint alleges that Handyman's president, Kathryn Miller, learned at some point that some of Handyman's five employees had been getting paid their "bonus" rate when they should have been receiving their standard hourly rate. Miller then hired an accountant to review

---

[2]In support of this allegation, plaintiffs quote a complaint posted on another website, www.ripoffreport.com. FAC ¶ 32.

Handyman's financial records, and the accountant informed her that Paychex had been making unauthorized withdrawals from Handyman's bank account for over a year. FAC ¶ 53. Plaintiffs allege that Miller contacted Paychex about the matter, but Paychex refused to reimburse Handyman for the withdrawn funds. FAC ¶ 54.

The FAC asserts twelve causes of action. The first asserts a claim for fraud, based on the allegation that Paychex has misrepresented or failed to disclose its policies and practices with regard to fees, its retention and use of customer assets, and the other activities described above. The second cause of action asserts a claim for restitution based on a theory of unjust enrichment.

The third through eighth causes of action are based upon various provisions of the California Civil Code. The third cause of action asserts a claim under the California Consumer Legal Remedies Act, Cal. Civ. Code. § 1750 *et seq.* The fourth cause of action asserts a claim for unfair business practices under Cal. Civ. Code § 17200 *et seq.* The fifth cause of action asserts a claim of false advertising under Cal. Bus. & Prof. Code § 17500 *et seq.*

The sixth cause of action asserts a claim for fraud or deceit under Cal. Civ. Code §§ 1709 and 1710. The seventh cause of action asserts a claim for actual fraud under Cal. Civ. Code § 1572. The eighth cause of action asserts a claim for constructive fraud under Cal. Civ. Code § 1573.

Counts 9, 10 and 11 assert claims for breach of fiduciary duty, conversion and breach of contract, respectively. Count 12 asserts a claim under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* Plaintiffs seek injunctive relief, a constructive trust upon all monies and assets that Paychex has acquired as a result of its allegedly unfair practices, restitution, and compensatory and punitive damages.

## DISCUSSION

### I. Motions to Dismiss under Rule 12(b)(6): General Principles

In deciding whether to grant a motion to dismiss for failure to state a claim, the court must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010). At the same time, however, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

Accordingly, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570. A "plausible" entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the "conclusory" from the "factual," and the "factually neutral" from the "factually suggestive." *Id.* at 557 n. 5. *See also Iqbal*, 129 S.Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss"); *accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. 2010).

### II. Choice of Law

Paychex argues that the California state law claims are barred by the choice-of-law provisions in the parties' contracts, all of which provide that they are to be governed by New York law. *See* Dkt. Nos. 27-6, 27-7, 27-8, 27-9, 27-10. In addition, Paychex contends that even aside from the choice-of-law provision, New York law should apply because New York has more substantial

contacts with and interests in this action than California does. Paychex also states that, when they entered into these contracts, the parties here agreed to be bound by the rules of the National Automated Clearing House Association ("NACHA"), which also contain a New York choice-of-law provision. *See* Dkt. #27-5.[3]

Plaintiffs respond that the Court should ignore the choice-of-law provisons in the contracts, because the contracts are unenforceable. According to plaintiffs, these are contracts of adhesion that purport to completely relieve Paychex of any liability for its own negligence or breach of contract, and as such the contracts are unconscionable.

In general, a federal district court must apply the choice-of-law rules of the state in which it sits. *Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 585 (8th Cir. 2007); *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). "This rule is not absolute, however. For example, if a district court in one state transfers an otherwise properly filed case to a district court in another state solely '[f]or the convenience of parties and witnesses,' 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law rules of the state in which the transferor court sits." *Eggleton*, 495 F.3d at 585-86 (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)). The reason for that rule is that "[t]here is nothing ... in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964). *See also Valley Juice Ltd., Inc. v. Evian Waters*

---

[3]The contracts also contain a mandatory-arbitration provision. *See, e.g.*, Dkt. #27-6 at 2, § 11. Paychex has not sought to enforce that provision, however, and at oral argument before this Court, counsel for Paychex stated that Paychex has waived its right to demand arbitration. Tr. (Dkt. #53) at 8-9.

*of France, Inc.*, 87 F.3d 604 (2d Cir. 1996) ("where ... a case is transferred from one federal jurisdiction to another at the behest of the defendant pursuant to 28 U.S.C. § 1404, 'a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed'") (quoting *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)).

This Court, then, is bound to apply California law with respect to the choice-of-law issue. In that regard, the Supreme Court of California has stated that "California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such [choice-of-law] provisions." *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-469, (1992).

> Utilizing those principles, the court must first
>
> determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue ... ." (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance [the court] will decline to enforce a law contrary to [California]'s fundamental policy.

*Brack v. Omni Loan Co., Ltd.*, 164 Cal.App.4th 1312, 1321 (4th Dist. 2008) (quoting *Nedlloyd Lines*, 3 Cal.4th at 464-66).

In the case at bar, New York clearly has a substantial relationship to the parties here. According to the FAC, Paychex is a Delaware corporation with its headquarters in Rochester, New York. FAC ¶ 10. Two out of the three plaintiffs, Road Service and Handyman, are businesses

operating in the Rochester area. Indeed, the transferor court noted that "a majority of the respective parties have greater contact with the Western District of New York than with the Central District of California." Dkt. #41 at 5.

The next step in the inquiry, then, is to determine whether New York law is contrary to a fundamental policy of California. Plaintiffs have failed to point out any respects in which that is so.

While plaintiffs contend that the contract is an unenforceable contract of adhesion, "California ... has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate." *Brack*, 164 Cal.App.4th at 1322 (quoting *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 917 (2001)). To avoid enforcement of a choice-of-law provision, the weaker party to the contract must show that "'substantial injustice' would result from its enforcement or that superior power was unfairly used in imposing the contract." *Washington Mutual*, 24 Cal.4th at 918. *See also Dotson v. Amgen, Inc.*, 181 Cal.App.4th 975, 347 (2d Dist. 2010) (agreeing with trial court's statement that "[a] contract of adhesion is not per se unenforceable. Only when its provisions are unfair does it become unenforceable").

Again, plaintiffs have not made such a showing. Plaintiffs point to certain clauses in the contracts that are arguably favorable in certain respects to Paychex, but those provisions are not so one-sided as to render the contracts unfair, nor is there any evidence that Paychex imposed the contracts on plaintiffs or coerced them into accepting their terms. *See Walnut Producers of California v. Diamond Foods, Inc.*, 187 Cal.App.4th 634, ___, 2010 WL 3213613, at *8 (3d Dist. 2010) ("A provision is substantively unconscionable if it 'involves contract terms that are so one-sided as to "shock the conscience," or that impose harsh or oppressive terms'") (quoting *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1322 (4th Dist. 2005)).

There is, then, no basis for finding the contracts here to be unconscionable, or to disregard the choice-of-law provisions, which all three plaintiffs agreed to. Accordingly, the Court will apply New York law to plaintiffs' claims. Plaintiffs' third through eighth causes of action, all of which are based on California statutory law, must therefore be dismissed.

## III. Plaintiffs' Claims

### A. Fraud and Breach of Fiduciary Duty Claims

As will be seen in the following discussion, plaintiffs' claims for fraud and breach of fiduciary duty both involve some of the same issues concerning the nature of the relationship between Paychex and plaintiffs. The Court will therefore address them together, beginning with the fraud claim.

Paychex argues that plaintiffs' fraud claim does not meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)).

Paychex contends that the complaint here does not meet that standard, because it does not identify any false representations by Paychex, nor does it provide any other particulars concerning

the alleged fraud. At most, Paychex argues, plaintiffs allege only that Paychex made some unauthorized withdrawals from plaintiffs' accounts. In addition, Paychex contends that under New York law, a cause of action for fraud will not lie when the alleged fraud relates to a breach of contract.

Plaintiffs respond that the fraud claim is pleaded in more than adequate detail. In particular, they cite paragraphs 36 through 44 of the FAC, which plaintiffs contend set forth the time, place and content of the relevant acts by Paychex constituting the fraud.

I conclude that plaintiffs' fraud claim has not been adequately pleaded, because it fails to allege any misrepresentations by Paychex. In that regard, it not only fails to satisfy the pleading standards under the Federal Rules, but it also fails to state a claim for fraud under New York law.

To state a cause of action for fraud under New York law, "a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003)). Plaintiffs have not done so.

Instead, the complaint simply alleges that Paychex made withdrawals from plaintiffs' accounts, without disclosing those withdrawals to plaintiffs or obtaining plaintiffs' approval. The cited portions of the complaint, ¶¶ 36 through 44, allege such withdrawals on various dates, but they do not allege any misrepresentations by Paychex in connection with those withdrawals.

Virtually the only allegations concerning any misrepresentations is the conclusory allegation that "Paychex misrepresented its fee charging policies and failed to disclose all charges that customers may be subject to in customer contracts," FAC ¶ 58, and that Paychex "made false statements

through its customer representatives when customers called to inquire why they are being charged."

*Id.*

These vague references to misrepresentations and false statements are devoid of any particulars, however. Nowhere does the complaint state what policies or charges are being referred to, nor does it explain how Paychex misrepresented or failed to disclose those matters. Likewise, it is impossible to tell from these allegations, or from any other allegations in the complaint, what statements Paychex's customer representatives are alleged to have made, or how those statements were false.

Arguably, plaintiffs' fraud claim is based less on affirmative misrepresentations than on Paychex's failure to disclose certain material facts. An omission can, in some circumstances, give rise to a fraud claim, but the facts pleaded here do not support such a claim.

A fraud claim based on a failure to disclose must allege that the defendant had a duty to disclose material information and failed to do so. *Barrett v. Freifeld*, 64 A.D.3d 736, 738 (2d Dep't 2009). The Second Circuit has stated that "[i]n the context of a business transaction, the duty to disclose arises where a party, with a duty to be complete, has made only a partial or ambiguous statement, or 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 91 (2d Cir. 2005) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)), *cert. denied*, 548 U.S. 904 (2006). In addition, "the duty to disclose must exist separately from the duty to perform under the contract." *Id.* (citing *Bridgestone/Firestone v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).

A duty to disclose information as part of a commercial transaction generally does not arise unless there is a confidential or fiduciary relationship between the parties. *See Chiarella v. United States*, 445 U.S. 222, 228 (1980) ("when dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose arises only when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them'") (quoting Restatement (Second) of Torts § 551(2)(a) (1976)) (brackets in original); *Eurycleia Partners, LP v. Seward & Kissel*, LLP, 46 A.D.3d 400, 402 (1st Dep't 2007) ("an omission does not constitute fraud unless there is a fiduciary relationship between the parties"), *aff'd*, 12 N.Y.3d 553 (2009); *Martian Entertainment, LLC v. Harris*, 12 Misc.3d 1190(A), 2006 WL 2167178, at *6 (Sup. Ct. N.Y. County 2006) ("It is well settled that in order to allege a fraud based on a failure to disclose or omission, the plaintiff must allege a confidential or fiduciary relationship giving rise to a duty to speak") (citations omitted).

"Under New York law, 'a fiduciary relation exists between two persons when one of them is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation.'" *Sheehy v. New Century Mortg. Corp.*, 690 F.Supp.2d 51, 71 (E.D.N.Y. 2010) (quoting *Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Serv.*, 388 F.Supp.2d 292, 305 (S.D.N.Y. 2005)). An ordinary contractual relationship will not typically give rise to such a relationship, absent some special circumstances that go beyond the mere existence of the contract. *See Fleet Bank v. Pine Knoll Corp.*, 290 A.D.2d 792, 741 (3d Dep't 2002) (stating that "there typically is no fiduciary relationship between a borrower and a bank," and that "a special relationship" that will give rise to a fiduciary duty "requires a closer degree of trust than an ordinary business relationship") (quoting *Busino v. Meachem*, 270 A.D.2d 606, 608 (3d Dep't 2000)). In that regard,

the Second Circuit has cautioned that "a fiduciary obligation is not to be lightly implied, lest it undercut [certain] basic principles of commercial law," among them the principle that a party to a contract cannot be held liable for fraud "if he simply fails to disclose information that he is under no obligation to reveal." *United States v. Skelly*, 442 F.3d 94, 97 (2d Cir. 2006).

No such special relationship has been pleaded here. All that is alleged in the complaint is that the parties contracted for Paychex to perform certain payroll-related services for them, and that in the course of performing those services, Paychex made excessive, unjustified and unauthorized withdrawals from plaintiffs' accounts. The parties' contracts themselves state that each plaintiff "agree[d] that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services to be performed," *see* Dkt. #27-6 at 2, § 2, and none of plaintiffs' allegations indicate otherwise.[4]

A separate but related problem with plaintiffs' fraud claim is that it is based on an alleged breach of contract. It is well established that "[a] fraud claim does not lie where the only fraud alleged arises from the breach of a contract." *Selinger Enter., Inc. v. Cassuto*, 50 AD3d 766, 768 (2d Dep't 2008) (quoting *WIT Holding Corp. v. Klein*, 282 A.D.2d 527 (2d Dep't 2001)). "To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent

---

[4]In deciding a motion to dismiss under Rule 12(b)(6), a court may consider not only the complaint itself, but also documents that are incorporated into or referred to in the complaint. *See Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *Cusack v. Delphi Corp.*, 686 F.Supp.2d 254, 256 (W.D.N.Y. 2010). In the case at bar, the FAC references the various agreements between Paychex and the plaintiffs, and there appears to be no dispute that the copies of those documents that have been submitted by Paychex are accurate copies of the relevant agreements. *See Zang v. Paychex, Inc.*, ___ F.Supp.2d ___, 2010 WL 3021909, at *1 n.2 (W.D.N.Y. 2010).

misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *TVT Records*, 412 F.3d at 91 (quoting *Bridgestone/Firestone v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).

In the case at bar, plaintiffs have not identified any particular misrepresentations or omissions that induced them to enter into these contracts; they simply allege that Paychex made withdrawals of which plaintiffs were initially unaware and to which they never consented. That is not enough to state a claim for fraud. *See Bridgestone/Firestone*, 98 F.3d 13, 19-20 (allegations that defendant made intentionally false statements indicating his intent to perform under the contract were not sufficient to support a claim of fraud under New York law); *Papa's-June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing fraud claim where "[t]he complaint does not allege a fraud claim that is sufficiently distinct from the breach of contract claim" but "merely appends allegations about [defendant's] state of mind to the claim for breach of contract"); *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234 (2d Dep't 1991) (where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie").

As stated, plaintiffs also fail to allege facts showing that Paychex had some fiduciary or other duty to plaintiffs, independent of its duties under the contracts. Plaintiffs' argument that Paychex had a fiduciary duty by virtue of its access to plaintiffs' bank accounts is not persuasive. That Paychex may have been in a position to withdraw funds from plaintiffs' accounts does not make it a fiduciary. Although plaintiffs contend that this demonstrates that Paychex occupied a position of trust vis-a-vis the plaintiffs, virtually all ongoing contractual relationships involve *some* degree of mutual trust,

particularly where one party to the contract has temporary custody of the other party's assets or property. That does not automatically give rise to a fiduciary relationship, however. For example, a vehicle owner who drops his car off at a garage for service or repair trusts the garage not to perform any unnecessary repairs, not to steal any of the contents of the vehicle, and so on, but that does not render the garage or the mechanic who works on the car a fiduciary with respect to the customer. The only "trust" involved in that relationship is the trust that the garage will live up to its contractual obligations to the customer.

Thus, in *Bridgestone/Firestone*, the plaintiff ("BFI") alleged that the defendants, who had performed debt collection services for the plaintiff pursuant to a contract, owed BFI a fiduciary duty distinct from their obligation to perform under the collection agreement. The Second Circuit disagreed, stating that the defendants' principal

> did not occupy a position of trust or special confidence with regard to BFI that imposed obligations beyond the express agreements. He had little discretion to exercise, his obligations under the contract being straightforward and fixed. *Whatever trust and confidence was placed in him had solely to do with his carrying out his obligations under the contract.* Nor was he relied upon for advice or the exercise of judgment based on superior information or professional expertise. We therefore vacate the finding of fraud.

98 F.3d at 20 (emphasis added). *See also JSB Industries, Inc. v. Nexus Payroll Services, Inc.*, 463 F.Supp.2d 103, 107-08 (D.Mass. 2006) ("In the instant case, all that is alleged is that ADP provided payroll services to JSB. This business relationship does not, in and of itself, create a fiduciary situation or position of trust requiring disclosure").

The same principles apply here. Paychex had certain well-defined, fixed obligations under the contracts, which by their terms gave Paychex little or no discretion with respect to carrying out those duties. Paychex's contractual duty was simply to withdraw funds from plaintiffs' accounts, and then

disburse those funds as necessary, to satisfy plaintiffs' payroll and tax obligations. That did not involve the sort of discretion or control that would give rise to a fiduciary relationship. Accordingly, plaintiffs' first cause of action, for fraud, and their ninth cause of action, for breach of fiduciary duty, must be dismissed. *See United States v. Chestman*, 947 F.3d 551, 569 (2d Cir. 1991) (explaining that "'[a]t the heart of the fiduciary relationship' lies 'reliance, and de facto control and dominance'" and that "[a] fiduciary relationship involves discretionary authority [by one party] and dependency [by the other]") (quoting *United States v. Margiotta*, 688 F.2d 108, 125 (2d Cir. 1982)); *see also Zang*, ___ F.Supp.2d at ___, 2010 WL 3021909, at *8-*12 (stating, with respect to claim that Paychex breached its fiduciary duties under ERISA, in regard to services that Paychex provided to 401(k) plan, that "there are no factual allegations in the complaint making it even plausible that Paychex could be deemed a fiduciary with respect to the Plan and its participants").

**B. Restitution/Unjust Enrichment**

Count 2 of the FAC, entitled "restitution/unjust enrichment," alleges that "Paychex received benefits at Plaintiffs' expenses [sic] by (1) accumulating excess fees in connection with purportedly providing services to Plaintiffs, (2) generating interest income from the monies it prematurely withdrew to pay taxes to the IRS, and (3) improperly withdrawing money from Plaintiffs' own bank accounts." FAC ¶ 65.

"[T]he term 'unjust enrichment' does not signify a single well-defined cause of action. Rather, such an action is for restitution or based upon quasi-contract." *Matter of Estate of Witbeck*, 245 A.D.2d 848, 850 (3d Dep't 1997). In short, restitution is the remedy when one party has been unjustly enriched at the expense of the other. *See AGF York 57 L.P. v. Glikman*, 24 Misc.3d

1225(A), 2009 WL 2208405, at *5 (Sup. Ct. New York County 2009) ("The remedy for unjust enrichment is restitution, which is essentially returning the money or property unjustly conferred" upon the defendant).

It is clear, then, that a claim for restitution, based upon a theory of unjust enrichment, sounds in quasi-contract. See *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) ("The theory of unjust enrichment lies as a quasi-contract claim") (quoting *Goldman v Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)). *Accord Edelman v. Starwood Capital Group, LLC*, 70 A.D.3d 246, 250 (1st Dep't 2009). It is equally clear that under New York law, the existence of a valid and enforceable agreement "ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987)). *Accord Tom Greenauer Development, Inc. v. Burke Bros. Const., Inc.*, 74 A.D.3d 1747, 1747 (4th Dep't 2010); *R.I. Island House, LLC v. North Town Phase II Houses, Inc.*, 51 A.D.3d 890, 896 (2d Dep't 2008). "An unjust enrichment claim therefore does not lie where a valid contract covers the subject matter that gives rise to the alleged enrichment." *Orbit One Communications, Inc. v. Numerex Corp.*, 692 F.Supp.2d 373, 380-81 (S.D.N.Y. 2010).

As explained above, plaintiffs' claims against Paychex arise out of the contracts, or at the very least out of the same subject matter as that covered by the contracts. This entire action is predicated upon the existence of a contractual relationship between Paychex and plaintiffs. Although plaintiffs argue that they may plead contract and quasi-contract claims in the alternative, that is true only when there is a *bona fide* dispute as to the existence of a valid contract. *See JTH Tax, Inc. v. Gouneh*, ___ F.Supp.2d ___, 2010 WL 2652127, at *6 (N.D.N.Y. 2010); *Hochman v. LaRea*, 14 AD3d 653 (2d

Dep't 2005). I see no ground for such a dispute here, and plaintiffs' second cause of action must therefore be dismissed.

## C. Conversion

Plaintiffs' conversion claim is based on their allegation that Paychex wrongfully withdrew money from plaintiffs' accounts, and then used that money to generate interest for its own benefit. This claim is subject to dismissal as well.

"Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Mirvish v. Mott*, 75 A.D.3d 269, ___, 901 N.Y.S.2d 603, 607 (1st Dep't 2010) (quoting *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105 (1927)). "The basis of an action for conversion is the denial or violation of the plaintiff's dominion over, rights to, or possession of property." *Id.* (quoting *Sporn v. MCA Records*, 58 N.Y.2d 482, 487 (1983)). "Where, as here, "the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Key Bank of N.Y. v. Grossi*, 227 A.D.2d 841, 843 (1996)). Where possession of property is initially lawful, conversion occurs when there is a refusal to return the property upon demand." *Salatino v. Salatino*, 64 A.D.3d 923, 925 (3d Dep't 2009).

"A conversion implies a wrongful act, a mis-delivery, a wrongful disposition, or withholding of the property." *.In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir. 1993) (quoting *Magnin v. Dinsmore*, 70 N.Y. 410, 417 (1877)). In the case at bar, Paychex contends that plaintiffs have not stated a claim for conversion, because they have not pleaded any "wrongful act" by Paychex. According to Paychex, it is clear from the allegations of the complaint and the parties' agreements

that Paychex has not committed any wrongful act, because the parties' agreements specifically authorized Paychex to withdraw money from its clients' accounts. *See, e.g.*, Ironforge's Paychex Services Agreement (Dkt. #27-6) at 2 ¶ 3 ("Paychex is hereby authorized to collect all Amounts Due from Client's bank account when due").

While it is at least questionable whether the complaint states a cause of action for conversion, I find it unnecessary to decide that question, since this claim must be dismissed as duplicative of plaintiffs' breach of contract claim. "Under New York law, the tort of conversion cannot be asserted if there is a duplicative claim sounding in contract unless the plaintiff asserts that the defendant has breached a duty independent of the contract." *East 2 West Product Group, LLC v. Henry Brown, LLC*, No. 09 CIV 1870, 2010 WL 2891190, at *1 (S.D.N.Y. July 15, 2010). *See Nwagboli v. Teamwork Transp. Corp.*, No. 08 Civ. 4562, 2009 WL 4797777, at *9 (S.D.N.Y. Dec. 7, 2009) ("New York law is clear in barring claims for conversion where damages are merely sought for breach of contract"); *see, e.g.*, *Eastman Kodak Co. v. Berkshire-Westwood Graphics Group, Inc.*, No. 09-CV-6185, 2010 WL 2710975, at *2 (W.D.N.Y. July 6, 2010) (granting default judgment for plaintiff on breach of contract claim, and dismissing claims for unjust enrichment, account stated, conversion and replevin as duplicative and/or insufficiently stated); *NTL Capital, LLC v. Right Track Recording, LLC*, 73 A.D.3d 410, ___, 901 N.Y.S.2d 4, 6 (1st Dep't 2010) ("The fourth cause of action, for conversion, is duplicative of the breach of contract cause of action").

While a claim of conversion thus "cannot be predicated on a mere breach of contract," *MBL Life Assur. Corp. v. 555 Realty Co.*, 240 A.D.2d 375, 376 (2d Dep't 1997), "the same conduct which constitutes a breach of a contractual obligation may also constitute the breach of a duty arising out of the contract relationship which is independent of the contract itself." *Dime Sav. Bank of N.Y. v.*

*Skrelja*, 227 A.D.2d 372, 372 (2d Dep't 1996). For example, in *Hamlet at Willow Creek Development Co., LLC v. Northeast Land Development Corp.*, 64 A.D.3d 85 (2d Dep't 2009), the parties' excavation agreement provided that the defendant was to excavate and remove 1.65 million cubic yards of material, and that that defendant "shall not over excavate." The plaintiff alleged that the defendant had excavated more than 1.65 million cubic yards of material, and sued for breach of contract, conversion, and other claims. The Appellate Division held that the defendant's alleged *excavation* of more than the agreed-to amount of material gave rise to a claim for breach of contract, while its alleged unauthorized *removal* of that material from the plaintiff's property, and its assumption of ownership of that material, gave rise to a cause of action for conversion. Though both claims arose out of the parties' contractual relationship, the court explained, "the two causes of action ... rest[ed] on separate duties" owed by the defendant to the plaintiff: the contractual duty not to over-excavate, and the common-law duty not to assume ownership over the plaintiff's property. *Id.* at 118.

In contrast, in the case at bar the only wrongful acts that Paychex is alleged to have committed are those that were in breach of the contracts. The parties' agreements authorized Paychex to make certain withdrawals from plaintiffs' accounts, and Paychex is alleged to have made unauthorized withdrawals, and to have made certain withdrawals sooner than necessary, in order to earn interest on plaintiffs' funds. Plaintiffs have not identified any extracontractual duty owed to them by Paychex that was breached by Paychex. Plaintiffs' conversion claim is therefore dismissed. *See AJW Partners LLC v. Itronics Inc.*, 68 A.D.3d 567, 568-69 (1st Dep't 2009) ("The counterclaims alleging conversion and breach of the implied covenant of good faith and fair dealing were properly dismissed, as they are based on a claim that plaintiffs had violated the parties' agreement by short

selling Itronics Inc.'s stock, and are thus duplicative of the remaining counterclaim alleging breach

of contract on that same ground"); *East 2 West*, 2010 WL 2891190, at *1 ("Plaintiff's conversion

claim is predicated on the same factual allegations as its breach of contract claim and Plaintiff has not

pleaded any breach of an independent duty owed by Defendant to Plaintiff. Accordingly, Plaintiff's

conversion claim is dismissed *sua sponte*, with prejudice"); *Sauer v. Xerox Corp.*, 938 F.Supp. 155,

163 (W.D.N.Y. 1996) (dismissing conversion claims where "it [wa]s difficult to see how [the]

conversion claims amount[ed] to anything more than an alleged breach of contract").


## D. Breach of Contract

The eleventh cause of action alleges that Paychex "consistently sneaked in unexplained

'phantom' charges–fees which were not agreed to or disclosed–in Plaintiffs' bills from Paychex."

FAC ¶ 128. Plaintiffs allege that "[b]y overcharging Plaintiffs and with fees that were not in the

contract and not notifying it of the extra charges, Paychex breached its contract with Plaintiffs." FAC

¶ 130.

In support of its motion to dismiss, Paychex argues that plaintiffs' contract claims must be

dismissed because plaintiffs have not identified any provisions in the contracts that were allegedly

violated by Paychex. Defendant states that "the contracts between Plaintiffs and Paychex do not

contain any terms setting forth the type or amount of fees that will or will not be charged, such that

fees could be deemed 'hidden' or 'phantom.'" Def. Mem. of Law (Dkt. #26) at 21.

The complaint does, however, allege specific unauthorized withdrawals and charges by

Paychex with respect to each plaintiff. I do not believe that plaintiffs must point to a particular

section of their contracts expressly prohibiting such charges or withdrawals, in order to state a facially valid cause of action for breach of contract.

With respect to Ironforge, the FAC alleges that Paychex made a series of unauthorized withdrawals from Ironforge's account after Ironforge cancelled Paychex's services in June 2007. Ironforge alleges that Paychex withdrew $43.75 on August 10, 2007 and again on August 15, 2007, followed by a $308.74 withdrawal on August 31, 2007 and a $101.74 withdrawal on September 10, 2007. FAC ¶ 37. Plaintiffs allege that these unauthorized withdrawals totaled about $1100. FAC ¶ 41.[5] Bergin allegedly contacted Paychex about this matter, and was told by a Paychex representative that he would "sort out the situation," but nothing was ever done, and this money was never reimbursed to Ironforge. FAC ¶¶ 42, 43.

Concerning Road Service, the complaint alleges that "in January and February 2008, Paychex made several unauthorized withdrawals from [Road Service]'s account under the pretext of putting toward [owner Rick Foringer's] 401(k)," but that in fact none of those funds were transferred to Foringer's 401(k). FAC ¶ 48. Plaintiffs allege that "[o]ver the course of one month, Paychex gradually withdrew at least $850.00 of Road Service, Inc.'s earnings," that "[a]ll of this money remains unaccounted for," and that Paychex has neither given Foringer an adequate explanation for where that money went, nor reimbursed Road Service for those unauthorized withdrawals. FAC ¶¶ 48, 49.

As to Handyman, plaintiffs allege that at some point, Handyman's president Kathryn Miller noticed that some Handyman employees were improperly being paid a "bonus" rather than standard

---

[5]Presumably, there were additional alleged unauthorized withdrawals, since the withdrawals specifically identified in the complaint total roughly $500.

hourly rate. After she hired an accountant to go over Handyman's books, Miller learned that "Paychex had been making unauthorized withdrawals for over a year ... ." FAC ¶ 53. When Miller complained to Paychex, a Paychex representative allegedly told her that she "was entitled to one year of Defendant's payroll services free of charge," but that Paychex would not reimburse her for any of the money that was withdrawn from Handyman's account. FAC ¶ 54.

Although these allegations are couched in terms of Paychex's alleged "fraud," as explained earlier, plaintiffs' fraud claim has been dismissed in part because it is based on nothing more than an alleged breach of contract. These allegations do, however, support a claim for breach of contract, at least on their face.

I recognize that under *Twombly* and *Iqbal*, it is not enough for plaintiffs simply to recite, in conclusory fashion, the elements of a cause of action for breach of contract. As the Second Circuit has explained, however, "although *Twombly* and *Iqbal* require 'factual amplification [where] needed to render a claim plausible,' *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ross v. Bank of America. N.A .(USA)*, 524 F.3d 217, 225 (2d Cir. 2008)), ... *Twomby* and *Iqbal* [do not] require the pleading of specific evidence or extra facts beyond what is needed to make a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010). Indeed, the *Twombly* Court itself stated that it was "not requir[ing] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.

In my view, plaintiffs' breach of contract claims meet that standard. They have alleged that Paychex made withdrawals from their bank accounts that were not authorized under the parties' contracts, and that Paychex has refused to explain the reason for the withdrawals or to reimburse plaintiffs.

-24-

After a period of discovery, Paychex may well establish that these alleged withdrawals either did not occur, or that they were in fact authorized under the contracts. If so, Paychex may be entitled to summary judgment on the breach of contract claim. At the pleading stage, however, I find that plaintiffs have sufficiently stated a claim for breach of contract. *See I.B.M. Corp. v. BGC Partners, Inc.*, No. 10 Civ. 00128, 2010 WL 1924715, at *2 (S.D.N.Y. May 12, 2010) ("While the exact terms of the contract are unclear as of yet, this lack of total clarity is not a reason to dismiss BGC's counterclaim[ for breach of contract]; instead, it is a reason to have discovery"); *Xstrata Canada Corp. v. Advanced Recycling Technology, Inc.*, No. 08-CV-1366, 2009 WL 2163475, at *3 (N.D.N.Y. July 20, 2009) (stating that defendant was "not required to state the entirety of circumstances surrounding its [breach of contract] counterclaims with specific factual detail," sufficient factual detail, and denying motion to dismiss, where counterclaim was "sufficient to demonstrate a right to relief beyond the 'speculative level'").[6]

## E. EFTA

Plaintiffs' twelfth cause of action alleges that defendants have violated EFTA, which was enacted by Congress in 1978 as part of the comprehensive Consumer Credit Protection Act ("CCPA"). *See Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008). The purpose of EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of

---

[6]At oral argument on the motion to dismiss, counsel for Paychex conceded, "[I]f you were to press me ..., I'd say that [the allegations concerning Road Service] probably state[] a cause of action for breach of contract," adding, "does it state ... a breach of contract for the other two plaintiffs based upon their allegations? Probably." Tr. (Dkt. #53) at 34.

participants in electronic fund transfer systems," with its "primary objective" being "the provision of individual consumer rights." 15 U.S.C. § 1693(a).

Section 1693m provides that "[e]xcept as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer ... ." 15 U.S.C. § 1693m(a).[7]

Paychex does not appear to deny that it constitutes a "person" within the meaning of EFTA. Although the term "person" is not defined in EFTA, it is defined in other parts of the CCPA, such as Truth in Lending Act, which defines "person" as "a natural person or an organization." 15 U.S.C. § 1602(d). "The term "organization" means a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association." 15 U.S.C. § 1602(c). Similarly, the Fair Credit Reporting Act defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681(b).

"With the common purpose of each statute to protect consumers with respect to financial credit, courts draw upon case law interpreting one statute for persuasive authority for another statute." *Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008): *See, e.g.*, *Johnson v. West Suburban Bank*, 225 F.3d 366, 379 (3d Cir. 2000) (finding class-action provisions in the

---

[7]Sections 1693h and 1693f both deal with the liability a financial institution to a consumer for certain acts or omissions. EFTA defines "financial institution" as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(8). Neither side here appears to contend that Paychex falls within that definition.

TILA and the EFTA to have the same meaning because the court did "not believe that Congress would have different intended meanings for identical statutory language contained in similar statutes"). I conclude, then, that Paychex is a "person" within the meaning of EFTA. *See Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1094 (N.D.Cal. 2006) (treating corporation as a "person" under EFTA).

The problem with plaintiffs' EFTA claims in the case at bar, however, is that EFTA liability runs only to aggrieved "consumers." The statute does define "consumer," as a "natural person." 15 U.S.C. § 1693a(5). Corporations or other business entities are not "consumers" for purposes of EFTA. *See Kashanchi v. Texas Commerce Medical Bank, N.A.*, 703 F.2d 936, 939-42 (5th Cir. 1983) ("The EFTA only protects 'consumers,' meaning natural persons, not business entities").

Plaintiffs here are all business entities, and hence do not fall within the definition of "consumers." In addition, the relevant regulations state that the Act applies "to any electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account." 12 C.F.R. § 205.3(a). The statute defines "account" as "a demand deposit, savings deposit, or other asset account ... established primarily for personal, family, or household purposes." See 15 U.S.C. § 1693a(2). "Accordingly, the EFTA does not apply to accounts that are used primarily or solely for commercial purposes." *Fischer & Mandell LLP v. Citibank, N.A*, No. 09CIV1160, 2009 WL 1767621, at *3 (S.D.N.Y. June 22, 2009). *See also Regatos v. North Fork Bank*, 257 F.Supp.2d 632, 638 n.10 (S.D.N.Y. 2003) (noting that EFTA "governs wire transfers to and from bank accounts 'established primarily for personal, family, or household purposes,'" and stating that since "the purpose of the account in question was purely commercial," EFTA was inapplicable) (quoting 15 U.S.C. § 1693a(2)). Plaintiffs' EFTA claim must therefore be dismissed.

### F. Road Service's Claims

In its opening and reply briefs in support of its motion to dismiss, Paychex has argued that Road Service's state law claims must be dismissed because they are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Paychex premised that argument on its assertion that "Road Service's state law claims are based entirely on alleged improper handling of 401(k) plan contributions." Def. Mem. (Dkt. #26) at 25.

The only state law claims that Paychex specifically referenced, however, are Road Service's claims under California's Unfair Competition Law and the California Consumers Legal Remedies Act. It is not clear whether Paychex also meant to argue that Road Service's common law claims, such as its claim for breach of contract, are likewise preempted. Paychex's supplemental memorandum of law filed in this Court after the case was transferred here (Dkt. #47) does not address the preemption issue.

By its terms, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This includes state common law actions that "relate to" an ERISA plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987).

The Supreme Court has explained that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines. Inc.*, 463 U.S. 85, 96-97 (1983). State claims are allowed to proceed, however, if they "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n.21.

Though ERISA preemption is broad, then, *see Romney v. Lin*, 94 F.3d 74, 78 (2d Cir. 1996), a state law claim is not preempted simply because it has some tangential relationship to retirement

benefits. In fact, the Second Circuit has described the principle that courts should not interpret ERISA as preempting state law claims whose effect on pension plans is tangential and remote as "a matter of common sense." *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 145 (2d Cir. 1989) (quoting *Rebaldo v. Cuomo*, 749 F.2d 133, 138 (2d Cir. 1984)).

In the case at bar, I conclude that Road Service's breach of contract claim is not preempted by ERISA. Road Service simply alleges that Paychex withdrew money from its account, supposedly to put into Foringer's 401(k) plan, but that it did not do so, and that Paychex never explained where that money went. There is no allegation that Paychex was in any way involved in administering that plan; to the contrary, the retirement services agreement between Road Service and Paychex provides that Road Service "is the Adopting Employer under the terms of the Plan and will serve as Plan Administrator and Trustee." Dkt. #27-9 ¶ 2. Thus, there is no direct connection between this claim and the administration of the 401(k) plan, or Foringer's benefits. ERISA preemption therefore does not apply. *See Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir. 1989) (allowing plaintiffs' state law claim for breach of contract was not preempted by ERISA, since it "did not bring into question whether the plaintiffs [were] eligible for plan benefits, but whether they were wrongfully terminated from employment"); *Venezuela v. Massimo Zanetti Beverage USA, Inc.*, 525 F.Supp.2d 781, 789 (E.D.Va. 2007) ("Plaintiff's breach of contract claim cannot fairly be characterized as an 'alternative means of recovering benefits allegedly due under ERISA,' and is therefore not preempted") (quoting *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir. 2005)).

**IV. Motion to Strike**

In its motion to strike, Paychex moves "to strike claims and/or eliminate or modify class action allegations in this lawsuit pursuant to Rules 12(f) and/or 23(d)(1)(D) and (E) ... ." Dkt. #27 at v. To some extent, this motion has been mooted by the Court's decision on the motion to dismiss. For example, Paychex contends that plaintiffs' putative class action claims based on alleged violations of California statutes should be struck from the complaint because those statutes have no application outside of California. Since the Court has dismissed those claims, that issue is moot.

Paychex also moves to strike Ironforge's claims asserted on behalf of the putative class, on the ground that Ironforge's claims are not typical of the proposed class. Paychex argues that that Ironforge's claims are all based on events that occurred after the termination of its contract with Paychex–specifically, that Paychex wrongfully continued to process transactions or withdraw money from Ironforge's account after the contract was terminated. That is not typical of the proposed class, Paychex asserts, since the class allegations focus on events that occurred while the relevant contracts were in existence. Plaintiffs respond that Ironforge's claims are typical of those of the class because they are based on the same type of alleged misconduct by Paychex, *i.e.*, making unauthorized withdrawals from its clients' bank accounts.

"Motions to strike are generally looked upon with disfavor." *New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F.Supp.2d 415, 438 (W.D.N.Y. 2010). *See also In re Tronox, Inc. Securities Litigation*, No. 09 CIV. 6220, 2010 WL 2835545, at *4 (S.D.N.Y. June 28, 2010) (""Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so") (quoting *Iliano v. Mineola Union Free School Dist.*, 585 F.Supp.2d 341, 357 (E.D.N.Y. 2008)).

"A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to 'preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Francis v. Mead Johnson & Co.*, No. 10-CV-701, 2010 WL 3733023, at *1 (D.Colo. Sept. 16, 2010) (quoting *Bryant v. Food Lion, Inc.*, 774 F.Supp. 1484, 1495 (D.S.C.1991). *See also Kazemi v. Payless Shoesource Inc.*, No. C 09-5142, 2010 WL 963225, at *2 (N.D.Cal. Mar. 16, 2010) ("motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for making arguments pertaining to the class allegations"); *Paikai v. General Motors Corp.*, 2:07-0cv-00892, 2009 WL 275761, at * 11 (E.D.Cal. Feb. 5, 2009) (noting that "the very purpose of allowing separate class certification proceedings" is to defer addressing potential problems with a proposed class to a later date).

In the case at bar, I see no reason to depart from the usual practice by deciding now, on a motion to strike, whether Ironforge's claims are typical of those of the proposed class. Plaintiffs' motion for class certification is not before me at this time, and I see no undue prejudice to defendant by allowing these allegations to remain in the complaint at this point. Paychex's motion to strike Ironforge's class claims is therefore denied. *See Daigle v. Ford Motor Co.*, ___ F.Supp.2d ___, 2010 WL 1875521, at *9 (D.Minn. 2010) (denying a motion to strike class allegations as premature); *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F.Supp.2d 609, 616 (N.D.Cal. 2007) (same).

I reach the same result with respect to Paychex's motion to strike plaintiffs' claims for punitive damages and attorney's fees. Although from the allegations of the complaint plaintiffs' chances of being entitled to punitive damages or attorney's fees appear to be remote at best, I again

see no prejudice to allowing these requests for punitive damages and attorney's fees to remain in the complaint. *See Citigroup, Inc. v. Wachovia Corp.*, 613 F.Supp.2d 485, 489 (S.D.N.Y. 2009) (motions to strike will generally be denied unless the matter sought to be struck is "significantly prejudicial" to one of the parties); *see also Burrell v. State Farm & Cas. Co.*, 226 F.Supp.2d 427, 440 (S.D.N.Y. 2002) (motion to "strike" punitive damages claim addresses "the relief to which the plaintiffs are entitled rather than the sufficiency of the claims in the pleadings, and it would be premature to address these issues before these claims have been decided").

That leaves Paychex's motion to strike allegations in the complaint concerning complaints about Paychex that various people (sometimes anonymously) posted about Paychex on the internet, as discussed above in connection with plaintiffs' fraud claim. Plaintiffs contend that these allegations are meant "to establish that there exists a large class of consumers who believe that they have been injured by Defendant's actions, as alleged in the FAC." Plaintiffs' Mem.(Dkt. #30) at 7.

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." In deciding whether to grant a Rule 12(f) motion, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). *See also Hargett v. Metro. Transit Auth.*, 552 F.Supp.2d 393, 404 (S.D.N.Y. 2008) ("To prevail on a motion to strike, the defendant must show that: (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant") (internal quotation marks omitted).

While these allegations appear to be of minimal relevance to any issues in this case, Paychex has not demonstrated that it will be prejudiced by their inclusion in the complaint. Accordingly, defendant's motion to strike these allegations is denied. *See Brown v. West Valley Environmental Services, LLC*, No. 10CV210, 2010 WL 3369604, at *7 (W.D.N.Y. Aug. 24, 2010) ("To succeed, the movant must show that it is prejudiced by the inclusion of the offending pleading"); *In re Tronox, Inc. Securities Litigation*, No. 09 CIV. 6220, 2010 WL 2835545, at *4 (S.D.N.Y. June 28, 2010) ("Typically, to prevail on a Rule 12(f) motion, the defendant must demonstrate ... that to permit the allegations to stand would result in prejudice to the movant").

## V. Leave to Amend

Plaintiffs state that if the Court dismisses any of their claims, they request leave to replead. Plaintiffs have not submitted any proposed second amended complaint, which is not surprising since they contend that all their claims have been properly pleaded in the first amended complaint. They simply ask that "if the Court disagrees with Plaintiffs' arguments," they be allowed "to amend the FAC so that it may plead Plaintiffs' causes of action in a manner found proper by this Court." Dkt. #30 at 8.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). At this point, however, there is before me no proposed second amended complaint, and it is not the Court's role to explain to plaintiffs what they need to do in order to correct the flaws in the first amended complaint. Plaintiffs are free to file a formal motion for leave to replead, along with

a proposed second amended complaint, but their present request for leave to replead is denied. *See In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation*, 586 F.Supp.2d 172, 196 (S.D.N.Y. 2008) (denying plaintiffs' request for leave to replead that "consist[ed] of a mere two-page appendage tacked onto their 125-page opposition brief," in which "plaintiffs essentially ask[ed] for an open-ended leave to replead," since, "[w]ithout any idea of what additional facts plaintiffs would allege if permitted to replead, this Court simply cannot determine whether any amendment to their pleadings would be in the interest of justice"); *Arista Records LLC v. Lime Group LLC*, 532 F.Supp.2d 556, 585 (S.D.N.Y. 2007) (denying motion for leave to replead, and stating that "if Lime Wire submits another motion for leave to replead, it must provide the Court with an indication of what additional facts it would allege if permitted to amend by attaching its proposed pleading to the motion") (internal quotation marks omitted).

## CONCLUSION

Defendant's motion to dismiss the first amended complaint (Dkt. #26) is granted in part and denied in part. Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 12 of the first amended complaint (Dkt. #15) are dismissed. In all other respects, defendant's motion is denied.

Defendant's motion to strike claims in the first amended complaint or in the alternative to eliminate or modify class action allegations (Dkt. #27) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      October 5, 2010.