# Exhibit A

**Deleted:** <sp>

**John G. Balestriere**
**BALESTRIERE FARIELLO**
225 Broadway, Suite 2900
New York, NY 10007
Telephone:   (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestriere.net
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**Deleted:** Yasmeen A. Allen**¶
Email: yallen@balestriere.net¶
Craig Stuart Lanza¶
Email: clanza@balestriere.net¶
**BALESTRIERE LANZA PLLC¶**
225 Broadway, Suite 2900¶
New York, NY 10007¶
Telephone: (646) 912-8462¶
Facsimile: (212) 208-2613¶
*Attorneys for Plaintiffs and Class*¶
¶
Lisa L. Maki¶
  Email: lmaki@lisamaki.net ¶
**LAW OFFICES OF LISA L. MAKI¶**
1111 South Grand Avenue¶
Suite 101¶
Los Angeles, CA  90015¶
Telephone: (213)745-9511¶
Facsimile: (213)745-9611¶
*Liaison Attorney for Plaintiffs and Class*¶
¶
**UNITED STATES DISTRICT**
**COURT¶**
**CENTRAL DISTRICT OF**
**CALIFORNIA¶**

| | |
|---|---|
| **HANDY   MAN   SOLUTIONS   d/b/a   MR. HANDYMAN    OF    EASTERN    MONROE COUNTY,   INC.,   and,   IRONFORGE.COM,** individually,   and   for   all   others   similarly situated, | Index No.: 09-cv-06264-DGL-MWP **SECOND** AMENDED CLASS ACTION COMPLAINT **JURY TRIAL DEMANDED** |
| Plaintiff, | |
| -against- | |
| **PAYCHEX, INC.,** | |
| Defendants | |

**Deleted:** Index No. 08 CV 06818 (SVW) (JWJx)¶

**Deleted:** FIRST

**Deleted:** HANDYMAN HOME
SOLUTIONS d/b/a/ MR HANDYMAN
OF EASTERN MONROE COUNTY,
INC., IRONFORGE.COM, and, **ROAD
SERVICE, INC.,** individually and for all
others similarly situated,¶
¶
. . . . . . Plaintiff,¶
¶
. . - against -¶
¶
**PAYCHEX, INC.,** ¶
¶
. . . . . Defendant.

**Deleted:**  ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

i

# TABLE OF CONTENTS

NATURE OF THE CASE ................................................................................1

JURISDICTION AND VENUE ......................................................................3

PARTIES .......................................................................................................4

CLASS ACTION ALLEGATIONS ...............................................................5

STATEMENT OF FACTS .............................................................................9

    I.     Payroll Services and Paychex ...........................................................9

    II.    Paychex Skims from Customer Accounts by Charging Unjustified
         Fees and Penalties that Clients Never Agreed to Pay. ..............................11

    III.   Paychex Keeps for Itself Interest Belonging to the Company-Clients
         by Deducting Funds for Payroll on Days Before Paychex Actually
         Pays the Company-Clients' Employees ......................................................14

    IV.   Paychex Withdraws Clients' Money to Pay Their Taxes Months
         Before the Taxes are Due.........................................................................15

    V.    Paychex's Fraud Involving Ironforge.com .................................................15

    VI.   Paychex's Fraud Involving Road Service, Inc............................................18

    VII.  Paychex's Fraud Involving Handyman Home Solutions d/b/a Mr
         Handyman of Eastern Monroe County ......................................................19

CAUSES OF ACTION AGAINST PAYCHEX ................................................21

COUNT 1—FRAUD .......................................................................................2

COUNT 2—RESTITUTION/UNJUST ENRICHMENT ...............................2

COUNT 3—VIOLATION OF CAL. CIVIL CODE §§ 1750 ET SEQ. ..............24

COUNT 4—VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 ET.
SEQ. ..............................................................................................................25

ii

COUNT 5—VIOLATION OF CAL. BUS. & PROF CODE §§ 17500 ET SEQ. ........................................................................................................27

COUNT 6—VIOLATION OF CAL. CIVIL CODE §§ 1709, 1710 ....................2

COUNT 7—VIOLATIONS OF CAL. CIVIL CODE § 1572 ..............................31

COUNT 8—VIOLATIONS OF CAL. CIVIL CODE § 1573 ..............................33

COUNT 9—BREACH OF FIDUCIARY DUTY ...............................................34

COUNT 10—CONVERSION ............................................................................3

COUNT 11 – BREACH OF CONTRACT............................................................37

COUNT 12 – VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT –        15 USC §§ 1693 et seq. ...................................................38

PRAYER FOR RELIEF ....................................................................................40

JURY DEMAND ...............................................................................................42

iii

Plaintiffs, by their attorneys Balestriere Fariello, for their Class Action Complaint respectfully allege as follows against Paychex, Inc. ("Paychex" or "Defendant"), upon information and belief, except as to allegations concerning Plaintiffs or their counsel, which are made upon personal knowledge, and except as otherwise indicated herein:

## NATURE OF THE CASE

1.    Plaintiffs and the class of other similarly situated businesses ("the Class" or "Company-Clients") are victims of an ongoing and insidious fraud.  Payroll company Paychex has quietly engaged in a fraudulent scheme to fatten its bottom line by embezzling small sums of money from its customers, small businesses found in every state in the Nation.  Over and over again, Defendant tells complaining customers that the withdrawals were merely innocent mistakes.  Yet, the consistency of what might total literally millions of withdrawals across the Nation over years betrays a deliberate and lucrative fraud.  Although each instance may add only a few cents or dollars to Paychex's profits, when aggregated over the life of the scheme for Paychex's *half a million* customers, the amount stolen adds up to tens if not hundreds of millions of dollars.

2.    The fraud is simple: Paychex skims small amounts of money, month after month, year after year, from its clients, usually by arbitrarily increasing fees or by charging small, undisclosed fees which customers

1

Deleted: <sp>

never agreed to pay.  Defendant also skims small amounts of interest due its clients by deducting money used for payroll on one day, but not depositing that money into an employee's account until a later day.  It, thus, keeps for itself the interest that its clients would be due if Paychex waited until the day of deposit to withdraw money from the clients' accounts.  Paychex also prematurely withdraws money from clients' bank accounts to pay taxes, thus profiting yet another way from interest due to its clients.  Further, on multiple occasions, Paychex has illegally withdrawn money from its clients' bank accounts—without authorization—and withheld the money until a client complains about the transaction (collectively, "the Skimming Fraud"). In many cases, Paychex simply refuses to refund the money.  Frustrated and preoccupied with running their own businesses, Class members are forced to accept their losses and move on.

3.     Paychex has exploited the fact that its typical customers are small- to medium-sized businesses that do not have the time or resources to set up in-house payroll systems.   These businesses have small-scale operations with busy principals who specifically decide to spend money on a payroll company for the very reason that they do not have the time to monitor closely all aspects of payroll.  The Company-Clients may have great sophistication in their areas of business, but not in payroll services and, for that reason, rely on Paychex—and pay fees to Paychex—for such

2

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

Deleted: <sp>

services, trusting Paychex with confidential financial information and access to the Company-Clients' bank accounts.  Thus, Paychex's small-sum-on-a-large-scale fraud has passed largely undetected, and completely unpunished and unabated, for years.  Plaintiffs bring this action to stop this fraud and seek some amends from Defendant for its long running Skimming Fraud.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

5.    This Court has personal jurisdiction over Defendant Paychex because it conducts significant business in this District and in the State of California.

6.    Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Central District of California because a substantial part of the events from which this claim arises occurred in this District and because Plaintiff I resides in this District.

Deleted: ¶
FIRST AMENDED CLASS ACTION COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

3

## PARTIES

7.     Plaintiff Ironforge.com is a company that has been custom forging ironwork for architects, interior designers and discerning clients for fifteen years[1] that used Paychex's services from on or around March 28, 2003, to June 2007.  Plaintiff resides in Los Angeles, California, in this district.

8.     Plaintiff Handyman Home Solutions, Inc. d/b/a Mr Handyman of Eastern Monroe County provides home maintenance and repair services in Monroe County, New York.  Plaintiff started using Defendant's payroll services in November 2007.

9.     Defendant Paychex (symbol: PAYX) is a publicly traded corporation incorporated in the state of Delaware and headquartered at 911 Panorama Trail South, Rochester, New York 14625.

10.     Paychex maintains at least one office in this District, including one at 300 Corporate Pointe, Suite 150, Culver City, California 90230.

11.     Paychex has been in the business of providing payroll and human resources services for small companies for 30 years and has 572,000 customers and 12,200 employees.[2]  During the fiscal year ending May 31, 2008, Paychex's total revenue was approximately $2.1 billion (a 9.5%

---

[1] http://www.ironforge.com/info.html (Last viewed: September 15, 2008).

[2] http://finance.yahoo.com/q/pr?s=PAYX (Last viewed: September 17, 2008).

Deleted: <sp>

increase from the previous year).[3]   In its 2007 annual report, Paychex declared $100 million in earnings from "interest on funds held for clients," which amounts to a 67% increase from the previous year.[4]

## CLASS ACTION ALLEGATIONS

Formatted: Bullets and Numbering

12.   Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") in their representative capacity on behalf of themselves and the Class of all persons similarly situated, defined as follows:

> All persons in the United States who have been or currently are Paychex customers from January 22, 2003, to January 22, 2009 ("Class Period").

Formatted: Bullets and Numbering

13.   **Numerosity.** Although the exact number of Class members is presently unknown to Plaintiffs (but is known to the Defendant), Plaintiffs believe that there are at least tens of thousands, if not hundreds of thousands, of Company-Clients, in every state in the Nation, defrauded by Paychex's Skimming Fraud.  The members of the Class are so numerous that joinder of all members is clearly impracticable.

14.   **Commonality.**  A substantial pool of questions of law and fact exists that is common to the Class.  Such common questions include, but are not limited to:

---

[3] http://finance.yahoo.com/q/is?s=PAYX&annual (Last viewed: September 17, 2008).

[4] http://www.shareholder.com/visitors/DynamicDoc/document.cfm?CompanyID=PAYX&documentID=2001&PIN=&resizeThree=no&Scale=100&Keyword=type%20keyword%20here&Page=2 (Last viewed: August 27, 2008).

5

Deleted: ¶
FIRST AMENDED CLASS ACTION COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

Deleted: <sp>

a.  Whether Defendant added unjustified, previously undisclosed charges and "penalties" to Class members' bills;

b.  Whether Defendant made unauthorized withdrawals from Class members' business bank accounts;

c.  Whether Defendant retained salary funds belonging to the Company-Clients or the Company-Clients' employees for its financial benefit;

d.  Whether Defendant prematurely withdrew money from Company-Clients' bank accounts for the purpose of paying taxes;

e.  Whether individuals employed by or otherwise associated with Paychex planned and organized the Skimming Fraud;

f.  Whether Defendant made any attempt to address any of Class members' complaints regarding the Skimming Fraud; and

g.  Whether, as a result of Defendant's misconduct, Plaintiffs and the Class are entitled to restitution, disgorgement, equitable relief, other relief, and punitive damages and if so, the amount and nature of such relief or damages.

6

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO: 08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

15.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs are ordinary Paychex customers who, along with all Class members, have been injured by the same wrongful acts and practices of Defendant as alleged herein.

16.    **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiffs have engaged competent counsel experienced in the prosecution of complex and class litigation.

17.    **Superiority.** A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated businesses to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender.  In addition, the plain reality is that without class certification, most Class members would be discouraged from even seeking relief because their potential recovery would be vastly outweighed by the costs of pursuing litigation.  This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations.

Deleted: <sp>

18.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

19.    **Maintainability.** This action is properly maintainable as a class action for the prior independent reasons and under the following portions of Rule 23:

    a.   The individual amounts of restitution involved, while of value, are generally so small that individual actions or other individual remedies are impracticable and litigating individual actions would be too costly;

    b.   Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation;

    c.   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and

    d.   Individual actions would unnecessarily burden the courts and waste judicial resources.

8

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

20.   **Predominance.** Questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

21.   Notice to the members of the Class may be accomplished inexpensively, efficiently, and in a manner best designed to protect the rights of all Class members.

22.   California—as the largest state in the union and the location of a number of Defendant's offices—is the center of gravity for this action.  As such, it is appropriate and consistent with existing law to certify a nationwide class of consumers under California law.

23.   Certification of a nationwide Class under the laws of California is also appropriate because:

    a.  Defendant conducts substantial business in California;

    b.  Defendant maintains more offices in California than any other state; and

    c.  A significant number of Class members reside in California.

## STATEMENT OF FACTS

**I.   Payroll Services and Paychex**

24.   Paychex is a company that offers payroll and related administrative and tax assistance to small businesses across the United States.  A customer delegates most of its administrative and compliance

9

tasks to Paychex and gives it access to all of the customer's and customer's employees' financial data to perform these services. These include calculation, preparation, and delivery of employee checks, as well as preparation and payment of federal, state, and local payroll taxes. Paychex targets clients with one to forty-nine employees, although it also has clients with more employees and its strategy for increasing profits is to attract more customers and add extra services for current clients.

25. Paychex is a publicly traded corporation with 12,200 employees and 572,000 corporate customers as of May 31, 2008.[5] Defendant's main source of revenue comes from recurring fees for payroll and human resources services. Its service revenue depends on the number of clients, the number of checks or transactions per client, and the ability to render ancillary services. Paychex also earns interest on funds held for clients between the time of collection from their clients and remittance to the tax or regulatory agencies or client employees and manages an investment portfolio.[6]

26. Paychex gets its clients by marketing itself to small and medium-sized businesses, usually with fewer than one hundred employees. According to Paychex's most recent 10-K statement filed with the SEC, the

---

[5] Paychex Form 10-K for the fiscal year ended May 31, 2008.

[6] http://www.secinfo.com/dsVS7.v5R7.htm#1stPage (last viewed August 27, 2008).

10

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

growth of the client base is achieved "primarily through the efforts of our direct sales force."[7]  Additionally, Paychex's 2006 Annual Report outlines the way in which it gets clients through referrals:

> In addition to our direct selling and marketing efforts, we utilize relationships with existing clients, certified public accountants ("CPA's"), and banks for new client referrals.  Approximately two-thirds of our new clients (excluding acquisitions) come from these referral sources.  To further enhance our strong relationships with CPA's, we have partnered with the American Institute of Certified Public Accountants ("AICPA") as the preferred payroll provider for its AICPA Business Solutions Partner Program. During the year ended May 31, 2005, the program was expanded to include our Retirement Services and MMS.[8]

## II.    Paychex Skims from Customer Accounts by Charging Unjustified Fees and Penalties that Clients Never Agreed to Pay.

27.    The most common—and easily hidden—form of fraud perpetrated as part of the Skimming Fraud is levying previously undisclosed and never justified fees.  Because Paychex has a Company-Client's information, Paychex can slightly raise fees or add new fees with ease.  And that is exactly what Paychex does, for customer after customer, month after month, year after year.

28.    Paychex's Company-Clients have complained about the Skimming Fraud for some time.  But Paychex has done nothing about these complaints, having every incentive to maintain the fraud and fatten its

---

[7] Paychex Form 10-K for the fiscal year ended May 31, 2008.

[8] Paychex 2006 Annual Report.

11

profits.  The following excerpts are examples of such complaints from the website "E-Opinions.com."[9]   At this site, current and former Paychex clients have posted reviews about the Paychex's services.  This is a sample; there are forty-seven reviews of Paychex, most of which are extremely negative, all posted because the busy Company-Clients principals were so frustrated by the Skimming Fraud that they spent some of their sacred time voluntarily posting complaints.  This website is specifically designed to display consumer experiences with various service-oriented companies:

> [T]he Paychex branch manager seems *to intentionally "make mistakes"* on the invoices they send me.  Watch out for overcharges, *the monthly fees seem to change at the will of the branch manager.*

> [T]hey treat their customers checking account like it was there [sic] own, *taking money out when ever they feel like it even if the numbers are in correct* [sic].

> We have had nothing but trouble with the sales side of paychex [sic].  They promised us a price on processing and on 401(k) *that did not turn out to be true*, and they have refused to make good on it.  All I get are excuses.  I might have to sue them.  STAY AWAY!

> I seem to be *consistently charged more than what was originally quoted to me*, sometime by as much as 40%. I thought I was going with a reputable company, and felt more comfortable after listening to both their salesperson and one from ADP.

> Paychex is not the company anyone can even think off [sic].  It is an unprofessional and unorganized company. *The sales people will tell you some thing* [sic] *and the people inside does some thing* [sic] *different* and there is no clear co ordination [sic] between them. Also be careful in

---

[9] http://www.epinions.com/bsrv-Human_Resources-Payroll-All-Paychex_Payroll_Service/display_~reviews (Last viewed: August 27, 2008).

12

Deleted: ¶
FIRST AMENDED CLASS ACTION COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

signing the documents with Paychex. They get the signature some how [sic] in one of those documents and *withdraw the money with out* [sic] *your notice*.

THE REAL ISSUE is when they come out to sell you their service they do not tell you about *HIDDEN CHARGES*. First of all, since they have access to your account, *they can basically take out whatever they want, whenever they want*. Also, if you leave them before the fourth quarter, they EXTORT *a never announced PENALTY* for you to get necessary tax forms. I wish I could go to the police department and file charges, because basically, *they stole money from me*.

I've been with Paychex for years, encountering inaccuracies, misspellings and penalties after penalties.

I still get mail from the "signed" by an entire Paychex department for services we have canceled as long as 9 months ago and for services we never had.[10]

29.   Yet another consumer complained on a different website descriptively called "Companies that Suck."[11]  The customer mentions an esoteric "Mid Atlantic Trustee Fee" which Paychex charged him:

Paychex 401k fees are high and absurd. I have 401k with them and they charged me almost 20% in fees on my contributions. They call the fee the "Mid-Atlantic Trustee Fee". Such a *high fee is unexplainable* and shows that they don't care about the end customer and only care about profit. If my employer didn't match my contribution I would need to earn 17% on my investment which is not plausible in most instances. Furthermore, *no statements* or account information I received from Paychex *gives information on how this fee is calculated*. . . .[12]

---

[10] http://www.epinions.com/bsrv-Human_Resources-Payroll-All-Paychex_Payroll_Service/display_~reviews (All capitalized emphases in originals, all italics emphases added).

[11] http://blog.syracuse.com/news/2008/01/wegmans_no_3_on_fortunes_best.html (last viewed on September 11, 2008).

[12] http://blog.syracuse.com/news/2008/01/wegmans_no_3_on_fortunes_best.html (last viewed on September 11, 2008) (emphasis added).

13

### III.   Paychex Keeps for Itself Interest Belonging to the Company-Clients by Deducting Funds for Payroll on Days Before Paychex Actually Pays the Company-Clients' Employees

30.   Paychex also wrongly keeps interest due to Company-Clients. Defendant takes a Company-Client's money on one day, but then does not deposit it into an employee's account until another future day—sometimes days later.  The Company-Client loses interest that it would earn but for this misconduct.

31.   Once Paychex's Company-Client employee complains online that he could not withdraw money from his bank account because Defendant did not transfer the actual salary into the employees' account.[13]  Only when this employee made a request to his bank for a certain sum did the money get transferred to the employee's bank account.  Thus, Paychex kept the money for days longer than justified.  The following is an excerpt from the employee's complaint:

> When an ATM, or any merchant, communicates with the Paychex computers and finds out that there is enough money in the account to cover the transaction, they give the OK to dispense the cash or the goods whatever . . . *but Paychex will not give up the money until the transaction is posted* i.e. until the bank, in this instance, actually asks for the cash.  *All this time, Paychex still "has" the money, to do with as they will.*  In this instance, if the bank had aleady given me the cash as it should have if the ATM machine worked correctly, the bank would be out the money until it posted the transaction.  Only then would Paychex give it up.

---

[13] The request happens when the ATM machine communicates with Paychex's system to get the money that the customer withdraws.

Deleted: <sp>

But they would have the cash "in their coffers" until then! Brilliant in a legal but ethically *sleazy* way. *Multiply this by hundreds of thousands of transactions and no wonder Paychex is doing so well . . . .*[14]

## IV. Paychex Withdraws Clients' Money to Pay Their Taxes Months Before the Taxes are Due

Formatted: Bullets and Numbering

32.   Additionally, Defendant abuses its responsibility to pay Company-Clients' taxes by extracting the tax money prematurely, thus profiting by earning unjustified interest, and then paying the tax to the IRS the day before taxes are due.

33.   Michael Johnston, an independent CPA, outlines this practice thoroughly on his website:

> In some cases . . . Paychex's TaxPay clients are **having their tax dollars taken out of their checking accounts a full 15 weeks before they are due.** Yes, according to **IRS Publication 15**, small businesses with quarterly withholding taxes les than $2,500, do not have to pay these taxes over to the IRS until the last day of the month following the end of a quarter! For example, taxes withheld from January 1, through March 31, don't have to be deposited with the IRS until April 30th.[15]

## V. Paychex's Fraud Involving Ironforge.com

Formatted: Bullets and Numbering

34.   Defendant Paychex injured Plaintiff Company-Client Ironforge.com through its ongoing and multifaceted fraudulent misconduct.

---

[14] http://www.ripoffreport.com/reports/0/245/RipOff0245232.htm (Last viewed: August 18, 2008) (emphasis added).

[15] http://www.about-accounting.com/paychex.aspx (Last viewed September 11, 2008) (emphasis in original).

Deleted: ¶
FIRST AMENDED CLASS ACTION COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

15

As a party of Defendant's Skimming Fraud, Paychex made a series of unauthorized withdrawals of funds from Ironforge.com's account until the company ultimately lost over $1,000.00 in earnings that has yet to be reimbursed.

35.   Plaintiff enrolled the payroll services of the Defendant on or around March 28, 2003, and then cancelled its services with Defendant in June, 2007.

36.   After the cancellation, however, Defendant impermissibly withdrew monies from Plaintiff's bank account at Wells Fargo & Company ("Wells Fargo").  Defendant made two unauthorized withdrawals, each in the amount of $43.75, on August 10, 2007, and again on August 15, 2007.

37.   Richard Bergin, the owner of Ironforge.com, called Wells Fargo in August 2007, to stop these initial unauthorized withdrawals, and Wells Fargo assured Bergin that the situation would be handled.  However, after this initial call, Defendant withdrew *$308.74 from Bergin's bank account on August 31, 2007.*

38.   Bergin again contacted Wells Fargo to stop the unauthorized withdrawals, and, again, the bank told Bergin that it would stop them. However, only days later, Defendant *again* withdrew *$101.74 from Bergin's bank account on September 10, 2007.*

16

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

Deleted: <sp>

39.    A Wells Fargo employee told Plaintiff during a phone call that this was not the bank's fault.  These withdrawals, the employee told Bergin, were most likely due to the Defendant switching the access number to the bank account after finding out that Plaintiff was attempting to block its access to the account.

40.    As a result, Plaintiff was forced to close its bank account completely after being told by a Wells Fargo employee that this was the only option.  This cost Plaintiff additional time, money, and frustration as well as approximately $1,100.00 in unauthorized withdrawals, money Plaintiff is still due.

41.    After *six months* of unauthorized withdrawals *after* Plaintiff cancelled the account with Paychex, Bergin made numerous calls to Paychex to try and resolve the situation.  During a call made on or around March 12, 2008, and documented and posted on YouTube on March 14, 2008,[16] Bergin spoke with a Paychex representative named James Boulton ("Boulton").  Bergin tried to explain to Boulton that withdrawals were being made without Bergin's authorization.  Boulton, however, said that the money owed to Bergin was "with the IRS" and that Bergin would have to go to the IRS to recoup his lost funds.  Bergin reiterated to Boulton that he

---

[16] http://www.youtube.com/watch?v=5vU4XuddhTo (last viewed on September 22, 2008).

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

had cancelled his services with Paychex and that it was Paychex's responsibility to give Plaintiff its money back because the contract Plaintiff had was with Paychex, not the IRS.

42.   Paychex's Boulton said several times that he would "sort out the situation," but he never did.  Boulton also said that he would call Bergin back ten minutes after the end of the above referenced phone call but, as documented in the video, Bergin did not hear back from him and called him two days later, only to get Boulton's voicemail.  Bergin never heard again from anyone at Paychex.

43.   Defendant finally stopped stealing Plaintiff's money, but the damage had already been done.

44.   Bergin's Company is like thousand or tens of thousands of others: ripped off as victims of Defendant's years long Skimming Fraud.

**VI.   Paychex's Fraud Involving Road Service, Inc.**

45.   Road Service, Inc. suffered damages from Paychex's Skimming Fraud when Defendant incrementally withdrew funds that were not put towards a 401(k), as specifically authorized by the Plaintiff.

46.   Rikk Foringer is the owner of Road Service, Inc., which is a small company with a total of two employees.

47.   Foringer noticed that in January and February 2008, Paychex made several withdrawals from his company's account under the pretext of

18

Deleted: <sp>

putting it towards his 401(k).  However, when Foringer contacted his 401(k) provider, he was notified that none of these funds were transferred towards his retirement plan as indicated by Paychex.  Over the course of one month, Paychex gradually withdrew at least $850.00 of Road Service, Inc's earnings.  All of this money remains unaccounted for.

48.   Defendant Paychex refuses to reimburse Road Service, Inc. for any of the money that was improperly withdrawn and has yet to provide an adequate explanation as to where it has been deposited.

49.   Plaintiff Road Service, Inc. has been subjected to Paychex's Skimming Fraud and seeks damages for its losses caused by Defendant.

## VII.   Paychex's Fraud Involving Handyman Home Solutions d/b/a Mr Handyman of Eastern Monroe County

Formatted: Bullets and Numbering

50.   Handyman Home Solutions, d/b/a Mr Handyman of Eastern Monroe County, is another small company that has lost a significant amount of hard-earned money as a result of Defendant's Skimming Fraud.  For over a year, Paychex withdrew unauthorized funds from the company's account.  When the president of Handyman Home Solutions finally realized the amount of money that had gradually been skimmed from her company's account, she confronted the Defendant and was told that her company would not be reimbursed for its losses.

Deleted: ¶
FIRST AMENDED CLASS ACTION COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

51.    Kathryn Miller is the president and managing owner of Handyman Home Solutions. She owns 51% of the company's shares. Her husband, David Miller, is the Secretary-Treasurer of the company. The company only has about five employees.

52.    Mrs. Miller first noticed that Paychex was making unauthorized withdrawals when she learned that certain employees were being paid by their bonus rate instead of their standard hourly rate. She then hired an accountant to review her company's financial records to assess the extent of Defendant's improper withdrawals. The accountant informed Mrs. Miller that Paychex had been making unauthorized withdrawals for over a year, resulting in a great financial loss to her company.

53.    Mrs. Miller and her accountant called Paychex seeking compensation for the unauthorized withdrawals. Instead of denying Miller's allegations, a Paychex representative merely informed her that she was entitled to one year of Defendant's payroll services free of charge. Paychex notified Miller that it would not return the specific amount of money that was improperly taken from her company, and further informed her that Defendant would not refund her company for cost of hiring an accountant to determine the financial loss caused by Paychex.

54.    This class action is necessary to put an end to Defendant's fraudulent conduct that is harming small companies across the nation.

20

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO: 08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

## CAUSES OF ACTION AGAINST PAYCHEX

## COUNT 1—FRAUD

55.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

56.   Plaintiffs bring this claim individually and on behalf of the Class against Paychex.

57.   Paychex misrepresented its fee charging policies and failed to disclose all charges that customers may be subject to in customer contracts. The Company also retained customer assets for a period of time without seeking authorization from customers and without notifying them, in the contracts or otherwise. Paychex also made false statements through its customer representatives when customers called to inquire why they are being charged.

58.   Paychex's misrepresentations and omissions as to their fees are central to Plaintiffs' decisions to use the Company's services and they are, therefore, material.  Plaintiffs retained Paychex's services because they decided it would be more cost-effective to outsource their payroll processing to Paychex, than to have full-time employees perform this function.   In making this determination, Plaintiffs placed greatest importance on the monthly charges its company must budget in planning for their business operations.  As a result, having to pay higher charges each

21

month placed a substantial burden on Plaintiffs' abilities to anticipate its month-to-month expenses which makes Paychex's misrepresentations and omissions material.

59. There is a consistent pattern of repeated problems with customer accounts, all of which are detrimental to customers rather than Paychex proving that these transactions were deliberate. Every time Paychex withholds an employee's salary or withdraws money from a customer's bank account and retains it until the customer or employee complains, the Company makes money because it retains the interest from holding the assets. Every time the Company charges a customer for services the customer did not sign up for, Paychex increases its revenue. The substantial financial benefit for Paychex leads to the inevitable conclusion that those transactions are not inadvertent but are a part of a deliberate scheme.

60. Paychex's customers relied on the Company's contractual representations of the cost of their services and on the customer representatives' explanation of what went wrong with their accounts. As a result, the customers not only signed up and paid for Paychex's "services" but also provided such sensitive and confidential information as their business' bank accounts and employee records. Further, Plaintiffs' reliance on Paychex's representations was reasonable because from their

22

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

perspective, it was unlikely that a reputable company and a leader in its industry would intentionally engineer a scheme to embezzle small sums. Plaintiffs assumed that the Company was honest in charging its fees because it would be a stretch to presume that it was intentionally defrauding them, which was also what Paychex counted on in devising this scheme.

61.   Moreover, Paychex's customers suffered financial loss when Paychex overcharged them for services, when they prolonged the return of funds it wrongfully withdrew and when its customers representatives made it difficult for customers to fix the Company's mistakes.  Some customers also suffered reputational and operational injuries when they did not have enough funds to cover Paychex's withdrawals from their bank accounts and their business activities were stifled as a consequence.

62.   Plaintiffs and Class members seek damages from Paychex including but not limited to disgorgement of all proceeds Paychex obtained from its fraudulent practices.

**COUNT 2—RESTITUTION/UNJUST ENRICHMENT**

63.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

64.   Paychex received benefits at Plaintiffs' expenses by (1) accumulating excess fees in connection with purportedly providing services to Plaintiffs, (2) generating interest income from the monies it prematurely

23

Deleted: <sp>

withdrew to pay taxes to the IRS, and (3) improperly withdrawing money from Plaintiffs' own bank accounts.

65.    It would be unjust for Paychex to retain any of these benefits because each and every benefit was procured as a result of fraud or other misconduct and without the consent or approval of Plaintiffs.

## COUNT 3—VIOLATION OF CAL. CIVIL CODE §§ 1750 ET SEQ.

Formatted: Bullets and Numbering

66.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

67.    Paychex has misrepresented or omitted the characteristics— specifically the fees charged and the process by which taxes are paid—of the services that it purports to provide company clients like Plaintiffs.

68.    Paychex has further misrepresented that it provides quality service when, in fact, its service is sub-standard, at best.

69.    Paychex has further advertised that it provides quality services to company clients when, in fact, it charges customers like Plaintiffs undisclosed fees, makes impermissible account withdrawals, and prematurely withdraws monies to be used for tax payments to the IRS.

70.    Plaintiffs have suffered damages as a result of Paychex's misrepresentations because they have lost money to Paychex's fraudulent moneymaking scheme.

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

## COUNT 4—VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200

## ET. SEQ.

71.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 71 of this Complaint as if fully set forth herein.

72.    Paychex has engaged, and is still engaging, in unfair competition by engaging in (1) unlawful business acts or practices, (2) unfair business acts or practices, (3) fraudulent business acts or practices, (4) unfair, deceptive, untrue, or misleading advertising, and (5) acts prohibited by §§ 17500 to 17577.5.

73.    Paychex has committed unlawful business acts or practices, as discussed elsewhere in this complaint, by violating Cal. Bus. & Prof. Code §§ 17500 et seq. and Cal. Civ. Code §§ 1572, 1573, 1709, 1710, and §§ 1750 et seq.

74.    Paychex has committed unfair business acts or practices by continually accessing former customers' bank accounts, retaining employee salaries, sneaking in extra charges in customer's bills, and impermissibly withdrawing funds from customers' and former customers' accounts.

75.    Paychex has committed fraudulent business acts or practices by representing that it provides quality service and assists in paying taxes when, in fact, Paychex charges undisclosed fees and impermissibly withdraws monies from customers' and former customers' accounts.

25

76.     Paychex has committed unfair, deceptive, untrue, or misleading advertising by representing that it provides quality service and assists in paying taxes when, in fact, Paychex charges undisclosed fees and impermissibly withdraws monies from customers' and former customers' accounts.

77.     Paychex's wrongful conduct alleged herein is part of a pattern or generalized course of conduct that occurred and continues to occur in the ordinary course of Paychex's business.  Thus, Paychex's conduct impacts the public interest.

78.     Paychex's acts and practices have deceived and are likely to deceive consumers.

79.     Paychex's acts and practices are unlawful because they violate Civ. Code §§ 1572, 1573, 1709, 1710, 1750 et seq.,; Cal. Bus. & Prof. Code §§ 17500 et seq.   Specifically, when Paychex customers asked for explanation about problems with payroll or repeated withdrawals of money from their bank accounts, Paychex and its representatives deliberately misled them by saying the transactions were inadvertent.  These practices were deceptive and misleading for the customers because they were paying for services that they did not agree to and because Paychex used the pretext of "mistake" to deprive its customers and their employees from their assets for prolonged periods.  It was reasonable for the Company's customers to

26

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

Deleted: <sp>

believe that Paychex and its representatives were being honest because they were doing business with a large and well established corporation and it is unlikely that such company would bother with small scale fraud. However, this is exactly the line of reasoning Paychex relied on when it designed this scheme to pray on its customers.

80.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff, on behalf of itself and all members of the Class, seeks an order of this Court permanently enjoining Paychex from continuing to engage in its unfair and unlawful conduct as alleged herein. Plaintiffs also seek an order awarding full restitution of all monies wrongfully obtained.

## COUNT 5—VIOLATION OF CAL. BUS. & PROF CODE §§ 17500 ET SEQ.

81.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 81 of this Complaint as if fully set forth herein.

Formatted: Bullets and Numbering

82.    During the Class Period, Paychex marketed, advertised, and sold to the public payroll and tax services on a nationwide basis, including in California.

83.    Paychex has engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the use of their payroll and tax services.

Deleted: ¶
FIRST AMENDED CLASS ACTION COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

84.   Paychex's advertisements and marketing representations that their payroll services included no hidden fees and that their tax services would be performed in a way most beneficial to the Company-Client are false, misleading, and deceptive as set forth more fully above.

85.   At the time it made and disseminated the statements alleged herein, Paychex knew or should have known that the statements were untrue, deceptive, or misleading and acted in violation of Cal. Bus. & Prof Code §§ 17500 et seq.

86.   Paychex actively concealed its knowledge that there were consistent hidden fees and inappropriate withdrawals of Company-Clients' money without their permission.

87.   Paychex's acts of untrue and misleading advertising present a continuing threat to consumers because such advertisements induced consumers to purchase Paychex's services, which are operated under false pretenses.

88.   As a result of the violations of California law described above, Paychex has been and will be unjustly enriched at the expense of Plaintiffs and the members of the Class.  Specifically, Paychex has been unjustly enriched by continually charging hidden fees and benefiting off the interest received from improperly withdrawn money.  This was all part of the services that were marketed, advertised, and sold in the State of California

and the United States through material misrepresentations regarding the details of payroll and tax services.

89.    As a result of the violations of California law described above, Plaintiffs and the members of the Class have suffered injuries in fact and have lost money.

90.    Plaintiffs seek restitution, injunctive relief, and all other relief allowable under Bus. & Prof. Code §§ 17535 et seq.

**COUNT 6—VIOLATION OF CAL. CIVIL CODE §§ 1709, 1710**

91.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 91 in this Complaint as if fully set forth herein.

92.    Cal. Civ. Code § 1710 provides in relevant part that "deceit . . . is either:

(1)    The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2)    The assertion, as fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3)    The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

29

(4)     A promise, made without any intention of performing

it."

93.    Paychex has violated and continues to violate Civ. Code §
1710(1) by suggesting that their payroll and tax services did not have any
hidden fees and were performed in a manner most beneficial to the
Company-Clients, when Paychex did not believe this to be true.

94.    Paychex has violated and continues to violate Civ. Code §
1710(2) by asserting that their payroll and tax services did not have any
hidden fees and were performed in a manner most beneficial to the
Company-Clients, when Paychex had no reasonable grounds for believing it
to be true.

95.    Paychex has violated and continues to violate Civ. Code §
1710(3) by suppressing the fact that their payroll and tax services contained
hidden fees and were not performed in a manner most beneficial to the
Company-Clients.

96.    Paychex has violated and continues to violate Civ. Code §
1710(4) by promising that their payroll and tax services do not contain
hidden fees and are performed in a manner most beneficial to the Company-
Clients, when in fact Paychex had no intention of performing on this
promise.

30

97.     Plaintiffs and members of the Class were harmed by Paychex's allegations regarding their payroll and tax services because they would not have enrolled these services had they known they were offered under false pretenses and were rigged to the benefit of the Defendant.

98.     Pursuant to Cal. Civ. Code § 1709, Paychex is liable for any damages which was proximately caused to Plaintiffs and members of the Class by Paychex's deceit.

## COUNT 7—VIOLATIONS OF CAL. CIVIL CODE § 1572

99.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 99 of this Complaint as if fully set forth herein.

100.   Cal. Civ. Code § 1572 provides in relevant part that "[a]ctual fraud . . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

(3) the suppression of that which is true, by one having knowledge or belief of the fact;

31

(4) A promise made without any intention of performing it; or,

(5) any other act fitted to deceive."

101.  Paychex has violated and continues to violate Civ. Code § 1572(1) by suggesting that their payroll and tax services did not contain hidden fees and were performed in a manner most beneficial to the Company-Clients, which Paychex did not believe to be true.

102.  Paychex has violated and continues to violate Civ. Code § 1572(2) by asserting that their payroll and tax services did not contain hidden fees and were performed in a manner most beneficial to the Company-Clients.  In fact, these assertions were false and known by Paychex to be false.

103.  Paychex has violated and continues to violate Civ. Code § 1572(3) by suppressing the fact that their payroll and tax services do have hidden fees and that that their services are not performed in a manner most beneficial to the Company-Clients.

104.  Paychex has violated and continues to violate Civ. Code § 1572(4) by promising that their payroll and tax services do not contain hidden fees and that their services are performed in a manner most beneficial to the Company-Clients, when in fact they had no intention of performing on the promise.

32

105.  Paychex has violated and continues to violate Civ. Code § 1572(5) by making false misrepresentations which were intended to lure their customers into enrolling their services which contained hidden fees, were not performed in a manner most beneficial to the Company-Clients, and were in fact extremely fraudulent.

106.  As a direct and proximate result of Paychex's fraud, Plaintiffs and the members of the Class have and will continue to suffer damages.

107.  Plaintiffs seek damages against Paychex including but not limited to disgorgement of all proceeds Paychex obtained from the contracts entered into with Plaintiffs and the members of the Class as well as pre-judgement interests and costs.

## COUNT 8—VIOLATIONS OF CAL. CIVIL CODE § 1573

108.  Plaintiffs repeat and realloge the allegations contained in paragraphs 1 through 108 of this Complaint as if fully set forth herein.

109.  Plaintiffs bring this claim individually and on behalf of the Class against Paychex.

110.  Cal. Civ. Code § 1573(1) provides in relevant part that "[c]onstructive fraud consists . . . [i]n any breach of duty which, without an actually fraudulent intent, gains an advantage . . . by misleading another to his prejudice . . . . "

33

111. Paychex has violated and continues to violate Civ. Code § 1573(1) by misleading Plaintiffs and the members of the Class to believe that their payroll and tax services did not contain hidden fees and were performed in a manner most beneficial to the Company-Clients. These actions constituted constructive fraud because they gave Paychex an unfair advantage, achieved by unfair means, over Plaintiffs and the members of the Class.

112. Plaintiffs seek damages against Paychex, including but not limited to disgorgement of all proceeds Paychex obtained from their unlawful business practices as well as pre-judgment interests and costs.

## COUNT 9—BREACH OF FIDUCIARY DUTY

113. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 113 of the Complaint as if fully set forth herein.

114. A fiduciary relationship existed between Plaintiffs and Paychex whereby Plaintiffs, with justification, placed trust and confidence in the integrity and fidelity of another. Plaintiffs trusted Paychex with substantial amounts of highly sensitive information: employer and employee confidential information, including, but not limited to, bank account, social security, and tax identification numbers.

115. Plaintiffs further trusted Paychex to safeguard its assets in connection with withdrawals necessary for tax payment purposes and for

34

Deleted: <sp>

making the necessary, and only the necessary, withdrawals to effectuate Plaintiffs' payroll obligations.

116.   Paychex had access to Plaintiffs' business structures, financial data, the amount of each employee's remuneration, employees' names, addresses, bank accounts, etc. This is all information which is considered extremely sensitive and can create numerous problems for Plaintiffs' businesses if it became public.  As an administrator of the Plaintiffs' payroll and as an actor on their behalf, Paychex owed fiduciary duties to its customers and their employees to act in good faith, to safeguard the information it acquired and to not abuse this privilege.

117.   By misusing the customers' bank accounts and accessing them without authorization, and by retaining customer assets, Paychex breached its fiduciary duty to Plaintiffs.  Further, by placing "hidden" charges and overcharging its customers, the Company abused Plaintiffs' trust and acted in bad faith which also constituted a breach of its fiduciary duty.

118.   There is no suitable justification for any of Paychex's behavior: although Paychex was entitled to assess fees and withdraw money to pay Plaintiffs' taxes, there is no explanation for Paychex's conscious decision to do so in a fraudulent and misleading manner.

119.   Plaintiffs and Class members seek damages from Paychex including but not limited to disgorgement of all proceeds Paychex obtained

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

35

from breaching its fiduciary duty to Plaintiffs and the members of the Class as well as pre-judgment interests and costs.

## COUNT 10—CONVERSION

120.  Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 120 of the Complaint as if fully set forth herein.

121.  Paychex converted Plaintiffs' money when it overcharged it and withdrew funds from its bank accounts prolonging the return of the funds and accumulating interest.

122.  Paychex was clearly not entitled to charge Plaintiffs fees which were not disclosed in the customer contracts. Further, Paychex had limited authorization to withdraw money from Plaintiffs and immediately transfer it to employees or to others, as necessary; its role was to be an intermediary, not a bank. Instead, the Company would withdraw money, seemingly to pay salaries, and would withhold it for arbitrary period, rather than immediately debit employees' bank accounts.  Customers or employees could only discover the delay if they closely examined their bank statements.  When that happened, Paychex's customer representatives would delay returning the money and would not admit to any wrongdoing.

123.  Moreover, the sums that Paychex converted are of particular and definite amount which are easily traceable because any transactions that Paychex did are reflected in Plaintiffs' bank statements.  Accordingly,

36

Paychex wrongfully overcharged Plaintiffs and withheld assets for extended periods of time retaining interest that did not belonged to them.

124.   Plaintiffs and Class members seek damages from Paychex including but not limited to disgorgement of all proceeds Paychex obtained from unauthorized withdrawals and the interest earned thereof, as well as pre-judgment interests and costs.

## COUNT 11 – BREACH OF CONTRACT

125.   Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 125 of the Complaint as if fully set forth herein.

126.   Plaintiffs contracted with Paychex to receive certain payroll services in exchange of agreed upon fees.

127.   Paychex, however, consistently sneaked in unexplained "phantom" charges—fees which were not agreed to or disclosed—in Plaintiffs' bills from Paychex.

128.   Plaintiffs fully and faithfully performed their obligations under the contract by paying all agreed upon fees in a timely manner.

129.   By overcharging Plaintiffs and with fees that were not in the contract and not notifying it of the extra charges, Paychex breached its contract with Plaintiffs.  This is not to say that each and every charge should have been anticipated and included in the contract.  However, Paychex did

37

not even attempt to notify Plaintiffs of these charges if they were in fact unanticipated, not to mention seek its approval of them.

130.   Paychex acted in bad faith and damaged Plaintiffs by sneaking in "hidden" fees.   Besides the tangible financial damage that Plaintiffs suffered because of decreased operational assets, Plaintiffs also suffered from loss of future profits in expanding its business or improving its services.   Plaintiff Ironforge.com also suffered reputational and emotional damages because its bank account could not cover checks which Paychex drew. This not only made it a risky customer but also damaged its reputation as a trustworthy business partner.

131.   Because Paychex failed to adhere to the terms of its customer contracts, Plaintiffs suffered extensive financial and reputational damages.

132.   Plaintiffs and Class members seek damages from Paychex including but not limited to disgorgement of all proceeds Paychex obtained from the contracts entered into with Plaintiffs and the members of the Class as well as pre-judgment interests and costs.

## COUNT 12 – VIOLATION OF THE ELECTRONIC FUND
## TRANSFER ACT – 15 USC §§ 1693 et seq.

133.   Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 133 of the Complaint as if fully set forth herein.

38

134.   The purpose of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems."

135.   At all times pertinent hereto, Plaintiffs and Class members were "consumers" damaged by Defendant's improper withdrawals.

136.   Plaintiffs maintain(ed) an "account" as that term is defined in 15 U.S.C. § 1693a(2).

137.   At al time pertinent hereto, Defendant was a "person" subject to liability as that term is defined by 15 U.S.C. § 1693m.

138.   As its common and uniform practice, Defendant makes "unauthorized electronic fund transfer[s]" from consumers as that term is defined in 15 U.S.C. § 1693a(11), by withdrawing funds from Plaintiffs' bank accounts without their authorization.

139.   Defendants violate 15 U.S.C. § 1693e(a), which provides that in the case of preauthorized transfers, the consumer may stop payment of such transfers by notifying his financial institution.  Defendant's violation occurs when it continues to transfer consumers' funds in spite of their cancellation of such authorization.

140.   Defendants also violate 15 U.S.C. § 1693e(b), which provides: "In the case of preauthorized transfers from a consumer's account to the

39

same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer,…,of the amount to be transferred and the scheduled date of the transfer."

141. As a result of the conduct of Defendant as alleged herein, Plaintiffs and Class members should be awarded actual damages in the full amount provided by law, as well as costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1693m(a)(2)(B) and (3).

142. As described herein and pursuant to 15 U.S.C. § 1693, Plaintiffs and Class Members are entitled to recover: treble damages for the injuries they have sustained, according to proof; punitive damages in an amount sufficient to deter and make an example of Defendant for its frequent, persistent, and intentional EFTA violations; and restitution in an amount according to proof.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that this Court enter judgment against Defendant as follows:

(a)    an order certifying the Class, and appointing Plaintiffs and their undersigned counsel of record to represent the Class;

(b)    a permanent injunction enjoining Defendant, its partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons

40

Deleted: ¶
FIRST AMENDED CLASS ACTION COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

acting under, in concert with it directly or indirectly, or in any manner, form

in any way engaging in the practices set forth herein, including any elements

of the Skimming Fraud;

(c)     a permanent injunction enjoining Defendant, its partners, joint

ventures, subsidiaries, agents, servants, and employees, and all persons

acting under, in concert with it directly or indirectly, or in any manner, form

utilizing any monies acquired by Defendant's unfair business practices,

including all profits, revenues, and proceeds both direct and indirect;

(d)     imposition of a constructive trust upon all monies and assets

Defendant has acquired as a result of its unfair practices;

(e)     compensatory damages and full restitution of all funds acquired

from Defendant's unfair business practices, including disgorgement of

profits;

(f)     actual damages suffered by Plaintiffs and Class members;

(g)     punitive damages, to be awarded to Plaintiffs and each Class

member;

(h)     costs of suit herein;

(i)     investigated costs;

(j)     both pre- and post-judgment interest on any amounts awarded;

(k)     payment of reasonable attorneys' fees; and

Deleted: ¶
FIRST AMENDED CLASS ACTION
COMPLAINT¶
CASE NO:  08 CV 06818 SVW(JWJX)¶
CASE NO: C06-04455 JSW

41

(l)    such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Dated:       New York, NY                    Respectfully Submitted,
             July 13, 2011


                             John G. Balestriere
                             **BALESTRIERE FARIELLO**
                             225 Broadway, Suite 2900
                             New York, New York 10007
                             Telephone: (212) 374-5401
                             Facsimile: (212) 208-2613
                             john.balestriere@balestriere.net
                             *Attorneys for Plaintiffs and Putative Class*

42